Steven **MANDELAS**, Plaintiff,

v.

**Daniel N. GORDON, PC,
et al., Defendants.**

Case No. C10–0594JLR.

United States District Court,
W.D. Washington,
at Seattle.

March 31, 2011.

Craig J. Ehrlich, Weisberg & Meyers, LLC, Phoenix, AZ, Jon N. Robbins, Loon Lake, WA, Joseph I. Hochman, Hochman Legal Group, Issaquah, WA, for Plaintiff.

J. Kurt Kraemer, Kjersten Turpen, McEwen Gisvold, LLP, Portland, OR, for Defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

JAMES L. ROBART, District Judge.

This matter comes before the court on Defendant Daniel N. Gordon, PC's ("Gordon") motion for summary judgment (Dkt. # 47). Plaintiff Steven Mandelas opposes Gordon's motion. (Dkt. # 51.) Having considered the submissions of the parties, the record, and the relevant law, and having heard oral argument, the court GRANTS in part and DENIES in part Gordon's motion (Dkt. # 47).

## I. BACKGROUND[1]

This action arises out of the efforts of Gordon, an Oregon-based law firm, to col-

1. In his response to Gordon's motion, Mr.    Mandelas cites the transcript of the April 1,

lect a debt that Mr. Mandelas owed to former Defendant CACV of Colorado, LLC ("CACV").[2] On December 14, 2006, the National Arbitration Forum ("NAF") entered an arbitration award against Mr. Mandelas and in favor of CACV. (Aylworth Aff. (Dkt. # 49) ¶ 2.) Gordon did not represent CACV in the arbitration proceedings. (*Id.*) In February 2007, CACV forwarded its claim against Mr. Mandelas to Gordon for collection. (*See id.* Ex. 9.)

On February 27, 2007, Gordon issued a summons in connection with a lawsuit that it planned to file in King County District Court to confirm the arbitration award. (*Id.* Ex. 1.) In April 2007, Gordon hired a process server, I–5 Legal, to serve Mr. Mandelas. (*Id.* Ex. 9.) On October 7, 2007, I–5 Legal served the summons and the application for an order to confirm arbitration award by leaving copies of the documents with "John Doe, Resident" at 2427 SW 152nd Street, Seattle, WA. (*Id.* Ex. 3.) The declaration of service filed by Rich Marlow, I–5 Legal's process server, described John Doe as a white male, age 50, with brown hair, who was 5'10" and weighed 200 pounds. (*Id.*)

Although the declaration of service states that the process server delivered the documents to Mr. Mandelas's correct address, Mr. Mandelas did not receive the documents. Mr. Mandelas resided at the 152nd Street address, but he was not home on October 7, 2007. (Ehrlich Decl. (Dkt. ## 52 (sealed), 67 (redacted)) Ex. M ("Mandelas Dep.") at 15.) Instead, he was in Palm Springs, California between October 4, 2007 and Thanksgiving, 2007. (*Id.*) No man fitting John Doe's description resided in Mr. Mandelas's home, and although Mr. Mandelas had given copies of his keys to his mother and to a female friend, he does not know of any man fitting John Doe's description who would have been at his home to accept service on October 7, 2007. (*Id.* at 7–8, 15.)

On October 31, 2007, Gordon filed the application to confirm the arbitration award in King County District Court. (Aylworth Aff. Ex. 8 at 2.) I–5 Legal filed the declaration of service. Mr. Mandelas made no filing in response to the application to confirm the arbitration award. On January 23, 2008, the state court entered the order confirming the arbitration award and entered judgment against Mr. Mandelas in the amount of $15,052.42, plus 12% interest from the date of the arbitration award. (*Id.* Ex. 4.) The court entered a corrected judgment on May 12, 2008. (*Id.* Ex. 5.)

In May 2008, following entry of the corrected judgment, Gordon began to attempt to contact Mr. Mandelas. (Aylworth Aff. Ex. 9; Mandelas Dep. at 16 (stating that

---

2010 deposition of Matthew Aylworth taken in this case, which he purports to have filed as Exhibit L to the Ehrlich Declaration. (*See* Ehrlich Decl. (Dkt. ## 52 (sealed), 67 (redacted)) ¶ 12.) Mr. Ehrlich, however, attached Mr. Aylworth's December 17, 2010 deposition, which did not contain the cited information. (*See* Ehrlich Decl. Ex. L.) Recognizing that this was likely a clerical error, the court ordered Mr. Mandelas to file a new or amended declaration of Mr. Ehrlich attaching the transcript of Mr. Aylworth's April 1, 2010 transcript. (Dkt. # 76.) Mr. Mandelas has not provided the court with an Exhibit L that corresponds to the Ehrlich Declaration and that contains the information cited in his response. (*See* Dkt. ## 79, 83.)

The court does not include in its recitation of facts any evidence from Exhibit L to the Ehrlich Declaration because it is not properly before the court. *See* Fed.R.Civ.P. 56(c) (factual positions in support of or in opposition to a motion for summary judgment must be supported by admissible evidence). Nevertheless, as discussed below, even if Mr. Mandelas had filed the correct deposition, it would not have affected the result in this case.

**2.** In December 2010, Mr. Mandelas entered into a settlement with CACV and voluntarily dismissed it from this lawsuit. (Dkt. # 34.)

his family received calls and that he may have received calls but did not answer calls from blocked numbers).) On June 9, 2008, Mr. Mandelas called Gordon. (Aylworth Aff. Ex. 9; Mandelas Dep. at 16.) Gordon's representative told Mr. Mandelas that there was a judgment against him for $15,000 as a result of the NAF arbitration. (Mandelas Dep. at 16.) Mr. Mandelas told Gordon that the debt was in dispute and that he assumed it had been dropped. (*Id.* at 18.) He also told Gordon that he was not in town on the date he was allegedly served, and he asked Gordon to send him a copy of the judgment and related documents. (*Id.*) Gordon sent Mr. Mandelas the documents that he requested. (Aylworth Aff. Exs. 7, 9.) Mr. Mandelas did not challenge I–5 Legal's declaration of service or otherwise contest the state court's entry of judgment.

Mr. Mandelas did not contact Gordon after the June 9, 2008 telephone call. (Mandelas Dep. at 21) According to its records, Gordon attempted to call Mr. Mandelas 11 times between June 9, 2008 and September 10, 2009, but was unable to reach him. (Aylworth Aff. Exs. 8, 9.) Mr. Mandelas testified that he occasionally received voicemail messages stating that it was important for him to return the call. (Mandelas Dep. 20–21.) The messages, however, did not indicate that they were from a debt collector, and Mr. Mandelas never returned the calls. (*Id.*)[3]

On September 28, 2009, Gordon filed an application for a writ of garnishment with the King County District Court. (Ehrlich Decl. Ex. E.) On October 6, 2009, the state court entered the writ of garnishment. (*Id.* Ex. F.)

Gordon filed an affidavit with the state court in which it stated that it mailed copies of the writ of garnishment to Mr.

Mandelas and to the garnishee on December 3, 2009. (Aylworth Aff. Ex. 13.) Mr. Mandelas, however, did not receive the notice of garnishment that Gordon had sent to him. In December 2009, Mr. Mandelas's bank notified him of the order requiring attachment of funds from his bank account; this was the first time Mr. Mandelas learned about the writ of garnishment. (Mandelas Dep. at 19.)

On December 8, 2009, Mr. Mandelas called Gordon regarding the garnishment. (*Id.*) Gordon's representative told Mr. Mandelas that there was a judgment against him for $17,441. (*Id.*) Mr. Mandelas eventually received a copy of the writ of garnishment from Gordon on December 21, 2009. (*Id.* at 10.)

On April 8, 2010, Mr. Mandelas filed the instant lawsuit. (Compl. (Dkt. # 1); Am. Compl. (Dkt. # 4) (addressing formatting problems in the original complaint).) Mr. Mandelas claims that Gordon's conduct in collecting the debt violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Washington Collection Agency Act ("WCAA"), ch. 19.16 RCW, and the Washington Consumer Protection Act ("WCPA"), ch. 19.86 RCW.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits, when viewed in the light most favorable to the nonmoving party, "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Galen*

---

**3.** Mr. Mandelas brings no claims in this action based on the telephone calls or voice    messages.

*v. County of Los Angeles,* 477 F.3d 652, 658 (9th Cir.2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. If the moving party meets his or her burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.,* 200 F.3d 1223, 1229 (9th Cir.2000).

## B. FDCPA Claims

█ "The purpose of the FDCPA is to protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive collection practices." *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 938 (9th Cir.2007). Section 1692f of the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. In addition to this general ban on unfair or unconscionable means of debt collection, § 1692f provides a non-exclusive list of eight prohibited means of debt collection. *Id.* § 1692f(1)-(8). This list includes, but is not limited to, such actions as collecting an amount not expressly authorized by agreement or permitted by law; soliciting a postdated check for the purpose of threatening or instituting criminal prosecution; depositing or threatening to deposit a postdated check prior to the date on the check; taking or threatening to take nonjudicial action to effect dispossession or disablement of property under certain conditions; charging any person for communications regarding the debt; communicating about the debt by postcard; or including information on the outside of an envelope that would indicate that the communication is for collection purposes. *Id.*

█ Whether conduct violates § 1692f requires an objective analysis that takes into account the "the least sophisticated debtor" standard. *See Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1030 (9th Cir. 2010); *Guerrero,* 499 F.3d at 934. The FDCPA is a strict liability statute, which "should be construed liberally in favor of the consumer." *Clark v. Capital Credit & Collection Serv., Inc.,* 460 F.3d 1162, 1175–76 (9th Cir.2006) (quotation omitted). The FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins,* 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

Mr. Mandelas does not contend that Gordon used any of the unfair or unconscionable means of debt collection enumerated in § 1692f. Rather, Mr. Mandelas invokes the FDCPA's general prohibition against unfair or unconscionable means of debt collection and contends that Gordon violated § 1692f by (1) seeking entry of judgment against Mr. Mandelas without giving him notice; (2) purposefully delaying its efforts to collect the debt in order to collect additional interest; and (3) failing to provide notice of the writ of garnishment as required by Washington law.

### 1. *Seeking Entry of Judgment without Notice*

█ Mr. Mandelas alleges that Gordon used an unfair or unconscionable means of collecting a debt in violation of § 1692f when it sought entry of judgment against him without giving him proper notice. Specifically, Mr. Mandelas alleges that Gordon failed to serve him with the summons and complaint in connection with the lawsuit to confirm the 2006 arbitration award; that once he became aware of the order and judgment entered against him he told Gordon that he had not been served and was unaware of the judgment; and that Gordon nevertheless filed a writ of garnishment to collect the judgment. (Am. Compl. ¶¶ 36–41.) Gordon contends

that it is entitled to summary judgment on this claim because, as a matter of law, it was not unfair or unconscionable conduct for it to rely on its process server's facially correct affidavit of service in seeking a default judgment and in filing the writ of garnishment to collect that judgment.

■ In Washington, a "facially correct return of service is presumed valid and, after judgment is entered, the burden is on the person attacking the service to show by clear and convincing evidence that the service was irregular." *Woodruff v. Spence,* 88 Wash.App. 565, 945 P.2d 745, 749 (1997). Washington law provides that personal service may be effected by delivering a copy of the summons "to the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein." RCW 4.28.080(15). The Washington Court of Appeals has upheld a return of service as complying with RCW 4.28.080(15) where the return stated that the process server left copies of the summons and complaint with "John Doe." *Woodruff,* 945 P.2d at 748–49

The court concludes that no reasonable trier of fact would conclude that Gordon's conduct was "unfair or unconscionable" in violation of § 1692f. I–5 Legal, a registered process server, filed a declaration that it had personally served Mr. Mandelas by leaving a copy of the summons at Mr. Mandelas's address of record with "John Doe, Resident." (Aylworth Aff. Ex. 3.) Because a facially correct return of service is presumed valid under Washington law, it was not unfair or unconscionable for Gordon to rely upon the declaration of service in obtaining an order confirming the arbitration award and converting it to judgment. The state court accepted the return of service as facially correct when it entered the judgment. Mr. Mandelas's recourse when he learned of the judgment

was to challenge the entry of default in state court by presenting clear and convincing evidence that service was improper. *Woodruff,* 945 P.2d at 749. Instead, by his own admission, Mr. Mandelas did nothing. In light of the fact that Mr. Mandelas never challenged service or the entry of judgment, it also was not unfair or unconscionable conduct for Gordon to file an application for a writ of garnishment to collect the judgment.

Mr. Mandelas also argues that Gordon's conduct was unfair or unconscionable because Gordon did not independently investigate and confirm that I–5 Legal had properly served Mr. Mandelas when it knew that I–5 Legal had, on occasion, improperly served debtors in the past. Mr. Mandelas has not cited competent evidence in support of this assertion. (*See* supra n. 1.) Even taking this assertion as true, however, the court concludes that no reasonable trier or fact would find that Gordon's conduct was unfair or unconscionable in light of Washington law, which presumes a facially correct return of service to be valid and places the burden of challenging a facially correct return of service on the defaulted defendant.

Finally, the court notes that it has found no authority supporting Mr. Mandelas's contention that pursuing a collection action based on a facially correct but factually ineffective return of service is unfair or unconscionable conduct under the FDCPA. Rather, the limited case authority runs contrary to this assertion. *See, e.g., Dillon v. Riffel–Kuhlmann,* 574 F.Supp.2d 1221, 1223–24 (D.Kan.2008) (granting summary judgment for the defendant law firm because the court found "no support for the proposition that pursuing a collection action without serving the debtor constitutes a violation of the FDCPA."); *see also Pierce v. Steven T. Rosso, P.A.,* No. Civ. 01–1244 DSDJMM, 2001 WL 34624006, at *2 (D.Minn. Dec. 21, 2001) (although im-

proper service might render the collection action a nullity under Minnesota law, it did not provide a legal basis to sustain a claim for violation of § 1692e of the FDCPA).

For these reasons, the court grants Gordon's motion for summary judgment on Mr. Mandelas's claim that Gordon violated the FDCPA by seeking entry of judgment without providing notice.

### 2. *Purposefully Delaying Collection Efforts*

Mr. Mandelas alleges that Gordon used an unfair or unconscionable means of collecting a debt in violation of § 1692f when it purposefully delayed its efforts to collect the debt. Mr. Mandelas contends that the arbitration award was entered on December 14, 2006; that judgment based on the arbitration award was entered on January 23, 2008; and that Gordon took no further action in collecting the judgment until it filed an application for a writ of garnishment on September 28, 2009. (Compl. ¶¶ 47–52.) Mr. Mandelas argues that Gordon had a motive to delay its collection of the debt because, under its fee agreement with CACV, it collected more money on larger debts. (Resp. at 10–12; Ehrlich Decl. Ex. I.) Thus, the longer Gordon allowed interest to accrue on the underlying debt, the more Gordon would eventually earn once it collected the debt. Gordon counters that it is entitled to summary judgment because it made continuous efforts to contact Mr. Mandelas and to collect the debt; Mr. Mandelas has no evidence that any delay was purposeful; and Mr. Mandelas was aware of the debt by June 2008 but made no efforts to contest or resolve the debt. The court agrees with Gordon.

First, Mr. Mandelas's assertion that no collection activity occurred between January 2008 and September 2009 is not supported by the record. Rather, the evidence shows that Gordon attempted to contact Mr. Mandelas on multiple occasions during that timeframe. Gordon filed the application to confirm the arbitration award on October 31, 2007. The state court entered judgment in January 2008, and entered an amended judgment in May 2008. After the amended judgment was entered, Gordon began to attempt to contact Mr. Mandelas. (Aylworth Aff. Ex. 9.) In June 2008, Mr. Mandelas contacted Gordon, and Gordon sent him the documents related to the entry of judgment immediately thereafter. (*Id.* Exs. 7 & 9; Mandelas Dep. at 18.) Mr. Mandelas did not contact Gordon after he received the documents, nor did he challenge the entry of judgment or dispute the debt. Gordon's contemporaneous records show that it attempted to call Mr. Mandelas in July, August, September, and December 2008, as well as in January, February, July, and September 2009. (Aylworth Aff. Ex. 9.) In September 2009, Gordon prepared the writ of garnishment. (Ehrlich Decl. E.) Even viewed in the light most favorable to Mr. Mandelas, this record does not demonstrate an unreasonable, let alone unfair or unconscionable, delay.

Second, Mr. Mandelas has presented no evidence that any delay was purposeful. Mr. Mandelas points to the contract between Gordon and CACV as evidence that Gordon purposefully delayed collection of the debt. Although the contract provides for Gordon to receive a percentage of the collected debt, including a percentage of any accrued interest (*see* Ehrlich Decl. Ex. I), the contract on its own is not evidence that any delay in collecting Mr. Mandelas's account was purposeful.[4]

---

**4.** Mr. Mandelas also relies on a deposition of Mr. Aylworth that he did not file with his motion. (*See* supra n. 1.) Even taking Mr.

Mandelas's representations of the contents of that deposition as truthful, however, the court

Finally, Mr. Mandelas has directed the court to no authority that delay, alone, constitutes unfair or unconscionable conduct under the FDCPA, and the delay Mr. Mandelas describes is not consistent with the types of unfair or unconscionable conduct proscribed by § 1692f. *See* 15 U.S.C. § 1692f(1)-(8). In addition, in light of the undisputed facts that Mr. Mandelas took no action to resolve the debt despite knowing as early as June 2008 that there was an outstanding judgment against him and that Gordon was attempting to collect it, Mr. Mandelas's argument that he "could not possibly have avoided or lessened the subject injury" falls short. (*See* Resp. at 18.)

For the foregoing reasons, the court concludes that no rational trier of fact would conclude that Gordon used an unfair or unconscionable means of collecting a debt by purposefully delaying its collection efforts, and grants Gordon's motion for summary judgment on this claim.

### 3. *Failure to Provide Notice of Writ of Garnishment*

Mr. Mandelas alleges that Gordon used unfair and unconscionable means of collecting a debt in violation of § 1692f when it failed to provide him notice of the writ of garnishment in violation of Washington law. Gordon moves for summary judgment on the ground that its conduct was not unfair or unconscionable because it provided the notice required by Washington's garnishment statute.

concludes that Mr. Mandelas has not established a genuine issue of material fact that there was purposeful delay. For example, Mr. Mandelas makes much of CACV's request that Gordon note Mr. Mandelas's file as "NEMO," which stands for "need money." (*See* Resp. at 11.) Mr. Mandelas states that CACV made this request on August 10, 2008. (*See id.*) CACV's request that Gordon take

Washington law sets forth the following requirements for service of a writ of garnishment upon a debtor:

1) When a writ is issued under a judgment, on or before the date of service of the writ on the garnishee, the *judgment creditor shall mail or cause to be mailed* to the judgment debtor, by certified mail, addressed to the last known post office address of the judgment debtor, (a) a copy of the writ and a copy of the judgment creditor's affidavit submitted in application for the writ, and (b) if the judgment debtor is an individual, the notice and claim form prescribed in RCW 6.27.140. In the alternative, on or before the day of the service of the writ on the garnishee or within two days thereafter, the stated documents shall be served on the judgment debtor in the same manner as is required for personal service of summons upon a party to an action.

RCW 6.27.130 (emphasis added).

Gordon submitted to the court a notarized "Affidavit / Return of Mailing of Writ of Garnishment" that states that Gordon served the writ, a copy of the judgment, and the notice and claim form pursuant to RCW 6.27.130 upon Mr. Mandelas on December 3, 2009. (Aylworth Aff. Ex. 13.) Mr. Mandelas states that he never received the notice required under the statute.

By its terms, RCW 6.27.130 does not require proof that the debtor actually received the writ. Instead, it requires proof that the necessary documents were mailed

action on the account is not evidence that Gordon purposefully delayed its collection efforts. In addition, the court observes that this request was made only two months after Gordon responded to Mr. Mandelas's call regarding the judgment, and Gordon's records show that it attempted to call Mr. Mandelas four times in August 2008. (*See* Aylworth Aff. Ex. 9; Mot at 7–8 (summarizing records).)

pursuant to the statute. *See* RCW 6.27.130. Because the evidence, even when viewed in the light most favorable to Mr. Mandelas, establishes that Gordon mailed notice of the writ of garnishment in accordance with Washington law, the court grants Gordon's motion for summary judgment on Mr. Mandelas's claim based on failure to provide notice of the writ of garnishment in violation of Washington law.

## C. WCAA / WCPA Claims

Mr. Mandelas alleges that Gordon violated the WCAA by purposefully delaying the collection of the debt in violation of RCW 19.16.250(14); by failing to provide notice of the writ of garnishment as required under state law;[5] and by conducting collection activities and bringing an action in a Washington state court without being licensed as a collection agency in violation of RCW 19.16.110 and RCW 19.16.260. Mr. Mandelas's WCPA claims are based on the same alleged violations of the WCAA.[6] Gordon contends that it is entitled to summary judgment on all of Mr. Mandelas's WCAA and WCPA claims because law firms are not subject to the WCAA.

### 1. A Law Firm May Qualify as a Collection Agency under the WCAA

■ The WCAA defines "collection agency" as "[a]ny person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be

owed or due another person." RCW 19.16.100(2)(a). The WCAA excludes the following from the definition of "collection agency":

> (c) *Any person whose collection activities are carried on in his, her, or its true name and are confined and are directly related to the operation of a business other than that of a collection agency, such as but not limited to:* Trust companies; savings and loan associations; building and loan associations; abstract companies doing an escrow business; real estate brokers; property management companies collecting assessments, charges, or fines on behalf of condominium unit owners associations, associations of apartment owners, or homeowners' associations; public officers acting in their official capacities; persons acting under court order; *lawyers*; insurance companies; credit unions; loan or finance companies; mortgage banks; and banks;

RCW 19.16.100(3)(c) (emphasis added). Gordon seizes upon the word "lawyers" in this exclusion and argues that the statute categorically exempts law firms from regulation as collection agencies under the WCAA.

No published Washington case has addressed whether lawyers are categorically excluded from regulation as a "collection agency" under RCW 19.16.100(3)(c). In *Trust Fund Services v. Aro Glass Co.,* 89 Wash.2d 758, 575 P.2d 716 (1978), the Washington Supreme Court held that an

---

**5.** Mr. Mandelas does not state which provision of the WCAA Gordon allegedly violated by this conduct. (*See* Am. Compl. ¶¶ 60–62.)

**6.** Certain violations of the WCAA constitute unfair or deceptive acts or practices occurring in the conduct of trade or commerce within the meaning of the WCPA:

> The operation of a collection agency or out-of-state collection agency without a license

as prohibited by RCW 19.16.110 and the commission by a licensee or an employee of a licensee of an act or practice prohibited by RCW 19.16.250 are declared to be unfair acts or practices or unfair methods of competition in the conduct of trade or commerce for the purpose of the application of the Consumer Protection Act found in chapter 19.86 RCW.

RCW 19.16.440.

entity created as an alter ego of a law firm was not subject to the CAA. The court observed that:

> Trust Fund was created to provide a convenient means for a law firm to collect debts related to the firm's business. The firm represented a number of health and welfare and pension trust funds. In the normal course of business, it was frequently necessary for the funds to bring actions against employers to recover unpaid contributions. Since the funds were not regarded as legal entities, the suits had to be brought in the names of the individual trustees.... Trust Fund was created as a non-profit corporation to which the accounts could be assigned, to eliminate the need to bring collection actions in the names of the trustees. Trust Fund has no assets, no separate clients, no employees and no office. It is merely the alter ego of the law firm and its only activities are related directly to that firm's business.

*Id.* at 718. The *Trust Fund* court did not hold that law firms are always excluded from regulation as collection agencies; nor was it confronted with the situation where a law firm's sole business is the collection of debts on behalf of its clients, as Mr. Mandelas has alleged in this case.

Recent case authority indicates a growing consensus that the WCAA does not exclude all law firms from regulation as collection agencies. In a recent unpublished decision, the Washington Court of Appeals considered allegations similar to those at issue in this case and observed that the WCAA does not categorically exclude law firms from regulation:

> It is clear that some lawyers may fall within the definition of "collection agency." RCW 19.16.100(3)(c) does not entirely exclude lawyers from ever qualifying as a "collection agency." It merely

excludes those who are collecting debts "directly related to the operation of a business other than that of a collection agency."

*Carter v. Suttell & Associates, P.S.,* No. 63628–6–I, 2011 WL 396038, at *7 (Wash. Ct.App. Jan. 13, 2011) (unpublished decision).[7] The Carter court affirmed the trial court's grant of summary judgment to the law firm because the plaintiff did not present any specific facts, aside from its own assertions, that the law firm was acting as a collection agency. *Id.* at *8 ("If Suttell indeed was acting as a collection agency, Carter failed to put forth sufficient evidence to reveal an issue of material fact.").

In addition, the majority of Washington federal court decisions, including several involving Gordon, have determined that lawyers are not categorically excluded from regulation as "collection agencies" under the WCAA. *See Lang v. Gordon,* No. C 10–0819RSL, 2011 WL 62141, at *2 (W.D.Wash. Jan. 6, 2011); *McLain v. Daniel N. Gordon, PC,* No. C09–5362BHS, 2010 WL 3340528, at *8 (W.D.Wash. Aug. 24, 2010); *LeClair v. Suttell & Assoc., P.S.,* No. C09–1047JCC, 2010 WL 417418, at *6 (W.D.Wash. Jan. 29, 2010); *Semper v. JBC Legal Group,* No. C04–2240RSL, 2005 WL 2172377, at *3 (W.D.Wash. Sept. 6, 2005). *But see Motherway v. Daniel N. Gordon,* PC, No. C09–5605RBL, 2010 WL 2803052, at *4–*5 (W.D.Wash. Jul. 15, 2010) (dismissing WCAA claim and noting that Gordon is not a "collection agency" under the WCAA because, while it "specializes in debt collection legal work, it is first and foremost a law firm.").

In light of the foregoing authorities, the court concludes that the WCAA does not categorically exclude all lawyers from regulation under the WCAA. Rather, under the plain language of the statute, a lawyer

---

**7.** Because *Carter* is an unpublished decision of the Washington Court of Appeals, the court considers it only as persuasive, rather than precedential, authority.

or law firm is only excluded if its collection activities are "carried on in his, her, or its true name and are confined and are directly related to the operation of a business other than that of a collection agency." RCW 19.16.100(3)(c).

Gordon raises two additional arguments, but they are not well taken. First, Gordon argues that because RCW 19.16.250(5) specifically prohibits collection agencies and their employees from "performing any act or acts, either directly or indirectly, constituting the practice of law," it does not make sense to hold that a law firm can be a collection agency under the statute. The court disagrees. As the Honorable Robert S. Lasnik points out in *Lang,* "a plain reading of the narrow exemption [in RCW 19.16.100(3)(c) ] belies that assertion" and "if the legislature had intended such a broad exemption, it could have included it." *Lang,* 2011 WL 62141, at *2.

Second, Gordon argues that if the statute is interpreted to apply to law firms, it is unconstitutional because it purports to regulate the conduct of lawyers and thus violates the separation of powers doctrine. Here, again, the court adopts Judge Lasnik's analysis:

> [T]he WCAA can be constitutionally applied to attorneys who are engaged in collecting debts on behalf of third parties. In essence, lawyers who are acting as debt collectors are engaging in the entrepreneurial aspects of law rather than practicing law. Applying the WCAA and CPA to that type of conduct does not run afoul of the separation of powers doctrine. Rather, it is no different than applying other generally applicable statutes, such as the criminal laws, to attorneys.

*Lang,* 2011 WL 62141, at *3 (citing *Short v. Demopolis,* 103 Wash.2d 52, 691 P.2d 163, 170 (1984)).

In sum, the court concludes that law firms are not categorically excluded from regulation as collection agencies under the WCAA.

### 2. There is a Genuine Issue of Material Fact Regarding Whether Gordon is an Unlicensed Collection Agency

The court concludes that Mr. Mandelas has established a genuine issue of material fact regarding whether Gordon must be licensed as a collection agency under RCW 19.16.110. First, it is undisputed that Gordon is not licensed as a collection agency in Washington. (*See* Ehrlich Decl. ¶¶ 14–16.) Second, there is no dispute that Gordon satisfies RCW 19.16.100(2)(a), which defines a "collection agency" as "[a]ny person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another person." Gordon's business is based upon collecting claims owed to its clients, including, in this case, CACV.

Third, Mr. Mandelas has provided the court with evidence establishing a genuine issue of material fact regarding whether Gordon's collection activities "are carried on in his, her, or its true name and are confined and are directly related to the operation of a business *other than that of a collection agency.*" RCW 19.16.100(3)(c) (emphasis added). Although Gordon is nominally a law firm, its primary purpose is the collection of consumer debts. (*See* Ehrlich Decl. Ex. J ("Aylworth Dep. (McLain)") at 36, 55.) Gordon employs only two attorneys; but it employs 13 to 18 non-attorney "collectors" in a "collection department." (*Id.* at 22–25.) The collectors attempt to collect debt from consumers before any efforts are made to file suit. (*Id.* at 23–24.) Under Gordon's standard processes, its non-attorney collectors attempt to collect debts on behalf of Gordon's clients before Gordon ever files suit,

and Gordon undertakes litigation only where "voluntary collection isn't possible." (*See* Ehrlich Decl. Exs. G ("Dispute Validation Procedure"), H ("Account Flow").) Gordon has directed the court to no evidence that it conducts any business that is unrelated to its collection activities. In light of this evidence, the instant case is distinguishable from *Carter*, in which the court affirmed summary judgment for the law firm in part because the plaintiff put forth no evidence supporting its assertion that the law firm employed "numerous employees that engage in collections work." *See Carter*, 2011 WL 396038, at *6–8.

Based on the above, the court concludes that Mr. Mandelas has established a genuine issue of material fact regarding whether Gordon's business activities are "confined and are directly related to the operation of a business other than that of a collection agency." Therefore, Gordon is not entitled to summary judgment on Mr. Mandelas's WCAA and WCPA claims.[8]

### III. CONCLUSION:

For the foregoing reasons, the court GRANTS in part and DENIES in part Gordon's motion for summary judgment (Dkt. # 47). The court GRANTS Gordon's motion with respect to Mr. Mandelas's claims that Gordon violated the FDCPA by seeking entry of judgment without notice, by purposefully delaying collection efforts, and by garnishing Mr. Mandelas's bank accounts without notice. The court DENIES Gordon's motion with respect to Mr. Mandelas's claim that Gordon violated the WCAA and WCPA because Mr. Mandelas has established a genuine issue

of material fact regarding whether Gordon is subject to regulation under the WCAA.

---

8. Gordon moved for summary judgment on Mr. Mandelas's WCAA and WCPA claims solely on the ground that it is not subject to the WCAA. However, in light of the court's rulings on Mr. Mandelas's FDCPA claims, the court is doubtful that Mr. Mandelas's WCAA and WCPA claims based on Gordon's alleged purposeful delay and improper notice of the writ of garnishment remain viable. (*See* Am. Compl. ¶¶ 55–59, 60–62.) In a separate order, therefore, the court orders Mr. Mandelas to show cause why the court should not grant summary judgment on these claims pursuant to Federal Rule of Civil Procedure 56(f)(2).