## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

August 2, 2022

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FLOYD SCOTT,<br><br>      Appellant,<br><br> v.<br><br>AMERICAN EXPRESS NATIONAL BANK;<br>and SUTTELL & HAMMER P.S.; MALISA<br>L. GURULE; NICHOLAS R. FILER; GALEN<br>L. RYAN; JOHN P. REID; SAMANTHA J.<br>BROWN; KAREN L HAMMER; ISAAC L.<br>HAMMER; ERIN E. PATTERSON; ROBERT<br>C. JINDRA; AND NICHOLAS K. WASSON;<br>and RAQUEL HERNANDEZ,<br><br>      Respondents. | No. 55343-1-II<br><br><br><br>ORDER GRANTING<br>MOTIONS TO PUBLISH |

Non-party movants, Igor Lukashin and the Northwest Consumer Law Center and Northwest Justice Project, filed motions to publish this court's unpublished opinion filed on April 26, 2022. After consideration, it is hereby

**ORDERED** that the motion to publish is granted.

FOR THE COURT: Jj. Worswick, Maxa, Lee

_____
WORSWICK, JUDGE

Filed
Washington State
Court of Appeals
Division Two

April 26, 2022

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| FLOYD SCOTT, | No. 55343-1-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| AMERICAN EXPRESS NATIONAL BANK; and SUTTELL & HAMMER P.S.; MALISA L. GURULE; NICHOLAS R. FILER; GALEN L. RYAN; JOHN P. REID; SAMANTHA J. BROWN; KAREN L. HAMMER; ISAAC L. HAMMER; ERIN E. PATTERSON; ROBERT C. JINDRA; AND NICHOLAS K. WASSON; and RAQUEL HERNANDEZ, | |
| Respondents. | |

WORSWICK, J. — American Express National Bank (Amex), filed a lawsuit against Floyd Scott for failing to repay credit card debt owed (Amex Action). After the Amex Action was dismissed for failure to prosecute, Scott sued Amex, an Amex employee, Raquel Hernandez, Suttell & Hammer law firm, and 10 individual attorneys of record employed by Suttell & Hammer for actions taken during the Amex Action. Scott alleged, among other things, that Suttell & Hammer intentionally inflicted emotional distress (IIED) and violated the Consumer Protection Act (CPA). The trial court dismissed Scott's lawsuit under CR 12(b)(6), ruling his claims were barred by the immunity doctrine.

Scott appeals the order of dismissal, arguing that (1) the immunity doctrine does not apply, and (2) he pled sufficient facts to show he is entitled to relief under the CPA.

No. 55343-1-II

We affirm the trial court's dismissal of all Scott's claims against Hernandez and Amex, and we affirm the trial court's dismissal of the IIED claim against Suttell & Hammer law firm and attorneys. But, we reverse the dismissal of the CPA claim against Suttell & Hammer law firm and attorneys and remand for further proceedings consistent with this opinion.

FACTS

In 2016, Amex, through its attorneys at Suttell & Hammer, filed a lawsuit against Scott in an attempt to collect a debt.[1] The case was dismissed in May 2017 for failure to prosecute. Scott alleged that the trial court notified Suttell & Hammer of the dismissal but failed to notify him.

After the case was dismissed, Suttell & Hammer erroneously filed a motion for summary judgment, seeking repayment of the alleged debt owed to Amex. It was on the scheduled hearing day that Scott learned the case had been dismissed over two years previously.

Scott then filed this action against Amex, Raquel Hernandez, Suttell & Hammer, and 10 Suttell & Hammer attorneys. He alleged that the defendants committed "blatant and numerous legal abuses" in relation to "a debt collection lawsuit." Suppl. Clerk's Papers (CP) at 165. Specifically, Scott alleged that (1) defendants violated the CPA by (a) failing to allege or prove that they were duly licensed and bonded under RCW 19.16.260, (b) failing to contact Scott prior to serving the summons and complaint, (c) failing to incorporate the RCW 19.16.250(8)(c) requirements in the complaint, (d) failing to itemize the amount owing to include interest, costs, fees, and other charges, (e) threatening to take action against Scott, including threatening to obtain summary judgment in a dismissed action, and (f) filing Hernandez's affidavit containing

---

[1] Scott neither admits nor disputes that he owes this debt. Suppl. CP at 165 ("The legitimacy or illegitimacy of that debt claim is not at issue in this case.").

2

No. 55343-1-II

inaccurate representations. Scott further alleged that (2) the defendants intentionally inflicted emotional distress on him by filing the Amex Action. All of the facts recited to support the claims in Scott's complaint were performed in the Amex Action.

Scott voluntarily dismissed his claims against most of the individual attorneys, reserving his claims against Amex, Hernandez, Suttell & Hammer, and attorneys Nicholas Filer and Robert Jindra (collectively, Defendants). Scott's first amended complaint pleaded the following allegations and facts in support of his remaining claims:

> 3.2 On information and belief, the principal purpose of Defendants' respective businesses is the collection of debts.
>
> . . . .
>
> 4.5 Further, the [prior] Complaint states that Defendants Suttell, Gurule, Filer, Ryan, Reid, and Brown are debt collectors, and that the action was initiated by Defendants to collect a debt. . . .
>
> 4.6 Therefore, in [Amex Action], each of said Defendants was acting as a "collection agency" and was subject to all the requirements of the Collection Agency Act ("RCW Chapter 19.16" or "CAA"). RCW 19.16.100(4) and (12).
>
> . . . .
>
> 4.38 The Complaint, which Suttell, Gurule, Filer, Ryan, Reid, and Brown filed on or about February 16, 2016, was these Defendants' first written communication with Scott.
>
> . . . .
>
> 5.19 Because Defendants attempt to collect debts allegedly owed by untold numbers of Washington citizens each year, and engage in the same nefarious practices described throughout this Complaint in many of those cases, the public interest is negatively impacted by the pattern of conduct engaged in by Defendants.
>
> . . . .
>
> 5.21 Plaintiff has been injured in his property. Over the nearly four year period from the date Defendants filed this action . . . Plaintiff expended 10's of thousands of dollars.

Suppl. CP 165-170, 177.

No. 55343-1-II

The Defendants filed a motion to dismiss under CR 12(b)(6), alleging that (1) all the Defendants were immune from liability because they acted within a judicial proceeding, (2) Scott's CPA claims fail because the Defendants' actions do not impact the public and they did not cause Scott injury, and (3) Scott's IIED claim fails because the filing of the motion for summary judgment was not outrageous conduct. The trial court granted the motion to dismiss with prejudice. Scott appeals the trial court's order of dismissal.

## ANALYSIS

### I. STANDARD OF REVIEW

Dismissal under CR 12(b)(6) is appropriate in cases where the plaintiff, beyond a reasonable doubt, "cannot prove any set of facts consistent with the complaint that would entitle the plaintiff to relief." *Jackson v. Quality Loan Serv. Corp.*, 186 Wn. App. 838, 843, 347 P.3d 487 (2015). We assume all facts alleged in the complaint to be true and may consider hypothetical facts not included in the record. *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). We review a motion to dismiss under CR 12(b)(6) de novo. *Kinney*, 159 Wn.2d at 842.

### II. LITIGATION PRIVILEGE[2]

Scott argues that the trial court erred in dismissing his claims because the Defendants are not immune from civil liability under the litigation privilege doctrine. We hold that litigation privilege completely shields all Defendants, except Suttell & Hammer, from liability.

---

[2] Because immunity afforded to attorneys, parties, and witnesses is not always absolute, we previously referred to the privilege as "litigation privilege," and for the reasons listed in *Mason v. Mason*, 19 Wn. App. 2d 803, 830, 497 P.3d 431 (2021), we follow suit in this case.

No. 55343-1-II

"Where an individual is entitled to the shield of 'absolute privilege' or 'immunity,' the individual is absolved of all liability." *Mason v. Mason*, 19 Wn. App. 2d 803, 830, 497 P.3d 431 (2021) (published in part) (quoting *Bender v. City of Seattle*, 99 Wn.2d 582, 600, 664 P.2d 492 (1983)). Witnesses in judicial proceedings are absolutely immune from tort liability for claims based on their testimony. *Wynn v. Earin*, 163 Wn.2d 361, 370, 181 P.3d 806 (2008). The purpose of this rule "'is to preserve the integrity of the judicial process by encouraging full and frank testimony.'" *Wynn*, 163 Wn.2d at 370 (quoting *Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc.*, 113 Wn.2d 123, 126, 776 P.2d 666 (1989)). Absent this immunity, witnesses might "self-censor" for fear of being sued. *Wynn*, 163 Wn.2d at 370. Therefore, absolute immunity granted to witnesses based on their testimony is a safeguard to ensure truthful and accurate testimony. *Wynn*, 163 Wn.2d at 370.

However, litigation privilege is not extended in every circumstance where conduct bears some relation to a judicial proceeding. For instance, parties and attorneys can be liable for tortious use of the legal process so long as a plaintiff can prove the elements of malicious prosecution or malicious use of the legal system. *See, e.g.*, *Mason*, 19 Wn. App. 2d at 836-37. Therefore, we apply litigation privilege where the conduct bears some relation to a judicial proceeding and where compelling public policy justifications support its application. *Mason*, 19 Wn. App. 2d at 837. Where litigation privilege applies, attorneys, witnesses, and parties are immune from liability. *Mason*, 19 Wn. App. 2d at 831. We review the application of immunity de novo. *See Wynn*, 163 Wn.2d at 369 (reviewing witness immunity issue de novo).

5

No. 55343-1-II

A.      *Hernandez Witness Immunity*

Scott's claims against Hernandez are based solely on her affidavit testimony submitted as a witness in support of the motion for summary judgment.  Hernandez is absolutely immune from tort liability based on her testimony.  *Wynn*, 163 Wn.2d at 370.  Therefore, the trial court did not err in dismissing Scott's claims against Hernandez.

B.       *Amex Litigation Privilege*

Litigation privilege also applies to parties for statements "pertinent or material to the redress or relief sought."  *McNeal v. Allen*, 95 Wn.2d 265, 267, 621 P.2d 1285 (1980).  "A statement is pertinent if it has some relation to the judicial proceedings in which it was used, and has any bearing upon the subject matter of the litigation."  *Demopolis v. Peoples Nat'l Bank of Wash.*, 59 Wn. App. 105, 109, 796 P.2d 426 (1990).  Aside from tortious use of the legal system, applying litigation privilege to parties for their actions in connection to a judicial proceeding clearly preserves and enhances the judicial process.  This encourages parties to pursue their rights through the judicial system without fear of incurring liability solely based on their actions in connection to the suit.  *McNeal*, 95 Wn.2d at 267.

Amex, through its attorneys, filed a lawsuit against Scott and filed a motion for summary judgment.  Amex's actions as described in Scott's complaint are pertinent to the relief sought because they were made in connection to its attempt to collect debt from Scott.  Amex's actions bear some relation to a judicial proceeding, and, public policy supports the application of the privilege.  Scott made no allegations against Amex for abuse of process.  And Scott does not

No. 55343-1-II

argue that applying the privilege to Amex goes against public policy justifications. We hold that

the trial court did not err in applying the litigation privilege to Amex.[3]

C.     *Attorney and Law Firm Litigation Privilege*

Litigation privilege initially applied to witnesses; in 1980 our Supreme Court expanded

the privilege to cover attorneys. *McNeal*, 95 Wn.2d at 267. Litigation privilege was extended to

attorneys because, as officers of the court, they must be afforded "the utmost freedom in their

efforts to secure justice for their clients." *McNeal*, 95 Wn.2d at 267. As applied to attorneys,

litigation privilege ensures that attorneys "have freedom to secure justice for clients." *Kearney v.*

*Kearney*, 95 Wn. App. 405, 415, 974 P.2d 872 (1999). The privilege was initially applied in

defamation cases, however, we extended the privilege to other causes of action. *Mason*, 19 Wn.

App. 2d at 830-31; *Jeckle v. Crotty*, 120 Wn. App. 374, 386, 85 P.3d 931 (2004).

In *Mason*, we noted that litigation privilege does not apply when the facts are such that

application of the privilege would defeat the public policy considerations justifying the privilege.

---

[3] Scott also argues that the litigation privilege does not apply for two reasons: (1) the summary judgment motion was brought in violation of RCW 19.16.250(1)(a), a statute prohibiting licensed collection agencies to "aid or abet any unlicensed person to engage in business as a collection agency"; and (2) the motion was filed after the Amex Action was dismissed and was not made during a judicial proceeding. We reject both arguments.

As to the first argument, RCW 19.16.100(4)(a) defines a "collection agency" as "[a]ny person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due *another person*." (emphasis added). And, RCW 19.16.100(5)(c) excludes from the definition of "collection agency" "[a]ny person whose collection activities are carried on in his, her, or its true name and are confined and are directly related to the operation of a business other than that of a collection agency." Because Amex initiated this action in an attempt to collect its own debt in its true name, RCW 19.16.250(1)(a) does not apply to Amex. Therefore, we reject this argument.

As to the second argument, dismissal does not terminate a judicial proceeding and motions may be properly made after dismissal. See, e.g., CR 59. Thus, this argument fails.

No. 55343-1-II

*Mason*, 19 Wn. App. 2d at 830. This exception applies in a narrow set of circumstances where an attorney "misappropriates a judicial proceeding to achieve an improper and extrinsic end," immunity "neither preserves 'integrity of the judicial process,' nor 'further[s] the administration of justice.'" *Mason*, 19 Wn. App. 2d at 837 (quoting *Bruce*, 113 Wn.2d at 126; *Fite v. Lee*, 11 Wn. App. 21, 28, 521 P.2d 964 (1974)).

      1. *Privilege as applied to the IIED claim*

Scott alleged that the law firm and individual attorneys are subject to liability because they filed the Amex Action and subsequently filed a motion for summary judgment after the suit was dismissed. Filing a lawsuit and a motion for summary judgment are actions which undeniably bear "some relation" to a judicial proceeding. *Deatherage v. Examining Bd. of Psychol*ogy, 134 Wn. 2d 131, 135, 948 P.2d 828 (1997).

Moreover, application of the privilege here would not defeat the public policy considerations justifying the privilege. *Mason*, 19 Wn. App. 2d at 830. To allege a claim of IIED, Scott must show facts, if taken as true, would be sufficient to show that Suttell & Hammer engaged in intentional or reckless, extreme, and outrageous conduct which resulted in severe emotional distress. *Jackson*, 186 Wn. App. at 843; *Repin v. State*, 198 Wn. App. 243, 265, 392 P.3d 1174 (2017). However, the filing of a motion post-dismissal cannot be extreme and outrageous conduct. Scott does not allege facts that the law firm or its attorneys "misappropriate[d] a judicial proceeding to achieve an improper and extrinsic end." *Mason*, 19 Wn. App. 2d at 837. Absent a showing of intentional or reckless extreme and outrageous conduct, we hold that litigation privilege applies to the Suttell & Hammer firm and attorneys as to the IIED claim.

8

No. 55343-1-II

2. *Privilege as applied to the CPA claim*

Scott also alleged that litigation privilege cannot shield the law firm from his CPA claims, because the law firm violated the Washington Collection Agency Act (WCAA),[4] specifically RCW 19.16.250 and RCW 19.16.260. We hold that litigation privilege does not shield collection agencies from CPA claims if they violate the WCAA.

The CPA prohibits unfair or deceptive acts in trade or commerce. RCW 19.86.020. It also provides for a private cause of action for an injured individual. RCW 19.86.093, RCW 19.16.250, and RCW 19.16.260 apply to "collection agencies." Specifically, RCW 19.16.260(1)(a) provides that "No collection agency or out-of-state collection agency may bring or maintain an action in any court of this state involving the collection of its own claim or a claim of any third party without alleging and proving that he, she, or it is duly licensed under this chapter and has satisfied the bonding requirements hereof, if applicable." Violations of RCW 19.16.250 and RCW 19.16.260 are also violations of the CPA. RCW 19.16.440. Thus, the CPA specifically assesses liability against collection agencies that bring or maintain an action in violation of these statutes.

The WCAA does not categorically exclude lawyers and law firms from being collection agencies. *See e.g., Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 56 n.14, 204 P.3d 885 (2009). Instead, the court determines whether a firm falls under that definition by examining the law firm's primary purpose. *Heintz v. Jenkins*, 514 U.S. 291, 294-99, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995). If a law firm's primary purpose is the collection of consumer debts, it may qualify as a collection agency under the WCAA. *Mandelas v. Gordon*, 785 F. Supp. 2d 951,

_____
[4] Chapter 19.16 RCW.

9

No. 55343-1-II

960-61 (W.D. Wash. 2011); *Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1111 (W.D. Wash. 2012).

In his first amended complaint, Scott alleged that "the principal purpose of Defendants' respective business is the collection of debts." Suppl. CP at 165. Scott further alleged that in the Amex Action, the law firm was "acting as a 'collection agency' and was subject to all the requirements of the [WCAA]." Suppl. CP at 166. Because we assume Scott's factual allegations are true, we must assume that Suttell & Hammer is a collection agency for purposes of our analysis.[5]

Because law firms may be collection agencies subject to liability under the WCAA under both RCW 19.16.250 and RCW 19.16.260, applying litigation privilege would defeat the public policy considerations justifying the privilege. *Mason*, 19 Wn. App. 2d at 837. And, in this case, immunity "neither preserves 'integrity of the judicial process,' nor 'further[s] the administration of justice.'" *Mason*, 19 Wn. App. 2d at 838 (quoting *Bruce*, 113 Wn.2d at 126). If immunity applies broadly to any action associated with litigation, there could never be a CPA claim based on RCW 19.16.250(9) and RCW 19.16.260(1)(a).

Therefore, we decline to apply litigation privilege to Suttell & Hammer law firm and attorneys. Accordingly, the trial court erred in dismissing claims against Suttell & Hammer and its attorneys based on litigation privilege for the CPA claim.

The trial court correctly concluded that litigation privilege shields Hernandez and Amex from civil liability for their participation in the Amex Action, and correctly concluded that the

---

[5] We express no opinion on whether Suttell & Hammer is a "collection agency" under the WCAA. However, viewing the complaint under the limited standard of review for CR 12(b)(6) dismissals, we must assume that they are.

No. 55343-1-II

IIED claim should be dismissed based on litigation privilege. However, the trial court erred in applying the litigation privilege to the CPA claim against Suttell & Hammer.

### III. THE CPA CLAIM

Scott argues that the Defendants violated the CPA by filing the Amex Action and the motion for summary judgment.[6] Specifically, he argues that the Defendants committed a per se violation of the CPA under RCW 19.16.440 because they violated RCW 19.16.250 and RCW 19.16.260. We hold that Scott alleged sufficient allegations to defeat a CR 12(b)(6) motion on the CPA claim.

To prevail against a CR 12(b)(6) motion on a CPA claim, Scott must allege facts to show (1) an unfair or deceptive act or practice; (2) occurring in the trade of commerce; (3) that impacts the public interest; (4) that causes injury to a plaintiff's business or property; and (5) that injury is casually linked to the unfair or deceptive act. *Panag*, 166 Wn.2d at 37. All five elements must be established for a CPA claim to be successful. *Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 350, 449 P.3d 1040 (2019). "Certain elements of a CPA claim are deemed satisfied 'per se' based on violation of another statute. The first two elements of a CPA claim are established where a statute declares that a violation is a per se unfair trade practice." *Keodalah*, 194 Wn.2d at 350. And a plaintiff's allegation that "money is diminished because of the unlawful conduct" satisfies the injury element." *Panag*, 166 Wn.2d at 57 (quoting *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990)).

---

[6] RCW 19.16.440 states violations of RCW 19.16.250 and RCW 19.16.260 "are declared to be unfair acts or practices or unfair methods of competition in the conduct of trade or commerce for the purpose of the application of the Consumer Protection Act." This would satisfy elements 1 and 2.

11

No. 55343-1-II

RCW 19.16.250(9) provides that "No licensee or employee of a licensee shall: . . . Communicate in writing with a debtor concerning a claim through a proper legal action, process, or proceeding, where such communication is the first written communication with the debtor, without providing the information set forth in subsection (8)(c) of this section in the written communication." Subsection 8(c) requires the first written communication with a debtor to include, the amount owed, interest charged, costs, and other charges, collection costs, and attorneys' fees. RCW 19.16.250(8)(c).

RCW 19.16.260(1)(a) states that "No collection agency or out-of-state collection agency may bring or maintain an action in any court of this state involving the collection of its own claim or a claim of any third party without alleging and proving that he, she, or it is duly licensed under this chapter and has satisfied the bonding requirements." RCW 19.16.260 also requires that the debt buyer attach to the complaint written evidence showing the debt owed. RCW 19.16.260(2)(a)-(c). A violation of RCW 19.16.250 or RCW 19.16.260 satisfies the first two elements of a CPA claim. RCW 19.16.440.

In his complaint, Scott alleged that the complaint filed in the Amex Action was the "first written communication" he received about the debt owed. Suppl. CP at 170. He also alleged that the law firm failed to comply with RCW 19.16.260(1)(a) by failing "to allege or prove that Defendants . . . were duly licensed under RCW Chapter 19.16 or that they, or anyone [sic] of them, had satisfied the Chapter's bonding requirements." Suppl. CP at 174. He also alleged that the complaint failed to comply with RCW 19.16.260 because the complaint did not include a number of required disclosures as required under the CPA.

12

No. 55343-1-II

Taking Scott's allegations as true, he has pleaded facts sufficient to show a per se violation of the first two elements of a CPA claim. RCW 19.16.440. Scott alleged that the Amex complaint violates both RCW 19.16.250(9) and RCW 19.16.260(1)(a) because the complaint was the first written communication and failed to include interest charged, costs and other charges, collection costs, and attorneys' fees as required under RCW 19.16.250(8)(c). In addition, the complaint failed to allege that Suttell & Hammer was duly licensed and bonded under Chapter 19.16 as required under RCW 19.16.260. Scott further alleged that the complaint failed to attach to the complaint written evidence showing the debt owed per RCW 19.16.260(2)(a)-(c). Taking Scott's allegations as true, Suttell & Hammer's complaint is a per se violation of the first two elements of a CPA action.

Scott also alleged that Suttell & Hammer attempts to collect debt from "untold numbers of Washington citizens each year, and engage[s] in the same nefarious practices described . . . the public interest is negatively impacted by the pattern of conduct engaged in by Defendants." Suppl. CP 177. Taken as true, the allegation would satisfy the public interest element of the CPA claim.

Finally, Scott also alleged facts, if taken as true, would constitute both injury and causation. Scott alleged injury to property for expenses incurred in learning about and defending against the Amex action. Because there was an expenditure of money caused by the unlawful practice of filing the Amex Action and the defective complaint, both causation and injury are met.

Scott's complaint alleged facts, if taken as true, sufficient to show a violation of the CPA. Therefore, the trial court erred in dismissing Scott's CPA claim against Suttell & Hammer.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55343-1-II

CONCLUSION

Witness immunity and litigation privilege bars Scott's lawsuit against Hernandez and Amex for all claims. The litigation privilege shields Suttell & Hammer from liability against the IIED claim but not the CPA claim. Because Scott alleged facts sufficient to survive a CR 12(b)(6) motion to dismiss against Suttell & Hammer for the CPA claim, the trial court erred in dismissing that claim.

We affirm the dismissal as to both Hernandez and Amex for all claims, and as to Suttell & Hammer law firm and attorneys for the IIED claim, but we reverse the dismissal of the CPA claim against Suttell & Hammer law firm and attorneys and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Maxa, J.

Lee, J.

14