Martha MORITZ, Plaintiff,

v.

DANIEL N. GORDON, P.C.,
et al., Defendants.

Case No. C11–1019JLR.

United States District Court,
W.D. Washington,
at Seattle.

Sept. 11, 2012.

Aaron Radbil, Weisberg & Meyers, LLC, Phoenix, AZ, Mathew J. Cunanan, DC Law Group, PLLC, Renton, Jon N Robbins, Weisberg & Meyers, LLC, Loon Lake, WA, for Plaintiff.

J. Kurt Kraemer, Portland, OR, for Defendants.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JAMES L. ROBART, District Judge.

### I. INTRODUCTION

Before the court are: (1) Defendants Daniel N. Gordon, P.C. ("DNG") and

Daniel N. Gordon's motion for summary (Def. Mot. (Dkt. # 42)); and (2) Plaintiff Martha Moritz's motion for partial summary judgment (Moritz Mot. (Dkt. # 45)). After the summary judgment motions were filed, Ms. Moritz filed a notice of voluntary withdrawal of her claims against Defendants under 15 U.S.C. §§ 1692b and 1692c. (Not. of Withdrawal (Dkt. # 59).) The court thus DENIES as MOOT the portions of Defendants' motion for summary judgment addressing these claims. With respect to the remaining issues raised in the parties' briefing, the court has considered the submissions of the parties, the balance of the record, and the relevant law, and deemed oral argument unnecessary.[1] Thus being fully apprised, the court GRANTS in part and DENIES in part Defendants' motion (Dkt. # 42) and GRANTS in part and DENIES in part Ms. Moritz's motion (Dkt. # 45).

Also pending before the court is Ms. Moritz's motion for leave to file supplemental authority (Dkt. # 60) in support of her motion for partial summary judgment (Dkt. # 45) and in opposition to Defendants Daniel N. Gordon, P.C. ("DNG") and Daniel N. Gordon's motion for summary judgment (Dkt. # 42). Ms. Moritz seeks to file a contract produced by Defendants in discovery after the parties had submitted their summary judgment motions. Ms. Moritz contends that the contract is relevant to her claim that DNG committed an unfair or deceptive act or practice in violation of the Washington Consumer Protection Act, RCW ch. 19.16. In light of the court's rulings herein, the court DENIES as MOOT Ms. Moritz's motion for leave (Dkt. # 60).

## II. BACKGROUND

This case involves Ms. Moritz's contacts with DNG while DNG attempted to collect a debt that Ms. Moritz owed its client, CACV of Colorado, LLC ("CACV"). On or about February 27, 2006, DNG mailed certain documents to the Washington State District Court for Whatcom County for filing, including a complaint on behalf of CACV against Ms. Moritz. (1st Radbil Decl. (Dkt. # 58) Ex. A at 2 (2/27/06 Cover Letter).) The cover letter identified DNG as "Attorney and Counselor at Law." (*Id.*) On or about March 13, 2006, the Whatcom County District Court filed CACV's complaint. (Aylworth Decl. (Dkt. # 44) Ex. 1 (State Ct. Compl.).) The complaint alleged that Ms. Moritz was indebted to CACV in the amount of $3,070.67 from January 12, 2006, plus interest at a rate of 12% per annum, and sought to recover this debt. (*Id.* Ex. 1 ¶ 4.) Below Mr. Gordon's signature on behalf of DNG, the complaint stated in bold font: "This Communication is from a Debt Collector." (*Id.* Ex. 1 at 3.)

In April 2006, Ms. Moritz contacted DNG, and the parties set up a payment plan. (Aylworth Decl. ¶ 7; 1st Kraemer Decl. (Dkt. # 43) Ex. 1 (Moritz Dep.) at

---

1. Defendants have requested oral argument with respect to both motions. Federal Rule of Civil Procedure 56 does not require a hearing where the opposing party does not request it. *See, e.g., Demarest v. United States,* 718 F.2d 964, 968 (9th Cir.1983). Moreover, oral argument is not necessary where the non-moving party suffers no prejudice. *Houston v. Bryan,* 725 F.2d 516, 517–18 (9th Cir.1984). "When a party has [had] an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in a refusal to grant oral argument]."

*Partridge v. Reich,* 141 F.3d 920, 926 (9th Cir.1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.,* 933 F.2d 724, 729 (9th Cir.1991)) (alterations in *Partridge*). "In other words, a district court can decide the issue without oral argument if the parties can submit their papers to the court." *Id.* Here, the issues have been thoroughly briefed by the parties and oral argument would not be of assistance to the court. Accordingly, the court denies Defendants' request for oral argument.

17:7–11, 20:15–25.) Ms. Moritz, however, failed to make all of the necessary payments. (Aylworth Decl. ¶ 7.) On January 15, 2007, DNG mailed a motion and declaration for default judgment, judgment, and supporting documents to the Whatcom County District Court for filing. (1st Radbil Decl. Ex. A at 3 (1/15/07 Cover Letter).) On January 29, 2007, the state court entered a default judgment against Ms. Moritz in the total amount of $3,979.12, plus interest at the rate of 12% per annum. (Aylworth Decl. Ex. 2 (Mot. for Default Judgment and Judgment).)

On November 15, 2007, DNG mailed a writ of garnishment and a copy of the state court judgment to the Whatcom County District Court for filing. (1st Radbil Decl. Ex. A at 4 (11/15/07 Cover Letter).) In July 2008, DNG issued a garnishment to Talasaea Consultants, Inc. ("Talasaea"), but the company answered that Ms. Moritz had not been employed there since May 23, 2008. (Aylworth Decl. ¶ 9, Ex. 3 (Ans. to Garnishment).)

On March 18, 2009, DNG mailed Ms. Moritz a letter confirming that she owed $5,619.43 and agreeing to accept monthly payments of $50.00. (2d Radbil Decl. (Dkt. # 46) Ex. 9 (3/18/09 Letter); *see also* 1st Kraemer Decl. Ex. 1 (Moritz Dep.) at 37:21–22.) Ms. Moritz, however, did not make monthly payments as agreed. (Aylworth Decl. ¶ 10.)

On July 1, 2010, Ms. Moritz spoke with DNG about the possibility of a new payment plan and told DNG that she was employed at Talasaea. (*Id.* ¶ 11.) That same day, DNG contacted Talasaea to verify Ms. Moritz's employment in order to issue garnishment. (*Id.* ¶ 12.) Also on July 1, 2010, DNG sent Ms. Moritz a letter confirming the payment plan, as well as a $6,384.14 balance on Ms. Moritz's debt owed to CACV. (2d Radbil Decl. Ex. 10 (7/1/10 Letter).)

On August 30, 2010, DNG employee Tasha Pierce called Ms. Moritz and left a voicemail message asking for a return call. (2d Radbil Decl. Ex. 7 (DNG Collection Notes) at GORD00040.) That same day, DNG sent Ms. Moritz a letter in which it agreed to a third payment plan that Ms. Moritz had set up. (*Id.* Ex. 11 (8/30/10 Letter); Aylworth Decl. ¶ 13.) Ms. Moritz did not make timely payments. (Aylworth Decl. ¶ 13.)

On November 1, 2010, Ms. Pierce called and left a second voicemail message for Ms. Moritz asking Ms. Moritz to call DNG. (2d Radbil Decl. Ex. 7 at GORD00043.) Ms. Pierce left similar voicemail messages for Ms. Moritz on November 29, 2010, and November 30, 2010. (*Id.*)

In December 2010, Ms. Moritz advised DNG that she was attempting to take out a loan in order to settle the debt to CACV. (Aylworth Decl. ¶ 14; 1st Kraemer Decl. Ex. 1 (Moritz Dep.) at 43:8–15.) On December 29, 2010, DNG sent a letter to Ms. Moritz confirming that it would accept $3,006.05 in full settlement of the debt owed to CACV. (2d Radbil Decl. Ex. 12 (12/29/10 Letter).) On both December 29, 2010, and December 30, 2010, Ms. Pierce left voicemail messages for Ms. Moritz asking for a return call. (*Id.* Ex. 7 at GORD00045–46.)

In January 2011, Ms. Pierce left four voicemail messages for Ms. Moritz asking Ms. Moritz to contact DNG. (*Id.* Ex. 7 at GORD00047–48.) On January 10, 2011, DNG mailed Ms. Moritz a letter confirming that it had not received payment and stating that the total amount due was $5,900.54. (*Id.* Ex. 13 (1/10/11 Letter).) On January 17, 2011, DNG mailed Ms. Moritz another letter in which it agreed to accept $4,581.05 in full settlement if DNG received payment by January 31, 2011. (*Id.* Ex. 14 (1/17/11 Letter).) Also on January 17, 2011, Ms. Moritz sent DNG a

letter disputing the validity of her debt pursuant to the Fair Debt Collection Practices Act. (Moritz Aff. (Dkt. # 47) Ex. 1 (Moritz Letter).) When the loan Ms. Moritz was pursuing fell through, DNG moved forward with garnishing Talasaea. (Aylworth Decl. ¶¶ 14, 15.) Ultimately, Ms. Moritz satisfied the state court judgment against her. (2d Radbil Decl. Ex. 3 (Aylworth Dep.) at 134:16–135:1.)

On June 17, 2011, Ms. Moritz initiated the instant action against Defendants. (Compl. (Dkt. # 1).) In her amended complaint, she alleges that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Washington Consumer Protection Act ("CPA"), RCW ch. 19.86. (Am. Compl. (Dkt. # 28) ¶ 1.) Ms. Moritz's CPA claim relies on her assertion that DNG violated the Washington Collection Agency Act ("WCAA"), RCW ch. 19.16. (*Id.*)

## III. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir.2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. "Where nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir.2010) (international citations omitted). If the moving party meets his

or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658. In adjudicating cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nevada v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (citations omitted); *see also Friends of Columbia Gorge, Inc. v. Schafer*, 624 F.Supp.2d 1253, 1263 (D.Or.2008).

### B. Defendants' Motion for Summary Judgment

#### 1. Fair Debt Collection Practices Act Claims

Ms. Moritz's federal claims are based on Defendants' alleged violations of the FDCPA. (*See generally* Am. Compl.) The FDCPA comprehensively regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices. *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060–61 (9th Cir.2011). Whether conduct violates the FDCPA requires an objective analysis that takes into account the "the least sophisticated debtor" standard. *See Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir.2010); *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir.2007). The FDCPA is a strict liability statute, which "should be construed liberally in favor of the consumer." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175–76 (9th Cir.2006) (quotation omitted).

For the purposes of the FDCPA, a consumer is any person obligated or allegedly obligated to pay a debt. 15 U.S.C. § 1692a(3). Ms. Moritz qualifies as a con-

sumer because it is undisputed that she owed a debt. (*See* Am. Compl. ¶ 18.) A debt collector, for the purposes of the FDCPA, is any person "who uses any instrumentality of interstate state commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The parties do not dispute that DNG is a debt collector for the purposes of the FDCPA, but they dispute whether Mr. Gordon similarly qualifies. The court begins with Ms. Moritz's FDCPA claims against DNG and then turns to her claims against Mr. Gordon.[2]

### a. 15 U.S.C. § 1692d(6) Claim Against DNG

█ Section 1692d of the FDCPA prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. In addition to this general ban on harassing or abusive conduct, § 1692d provides a non-exclusive list of six prohibited acts, including "the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). The Ninth Circuit has not yet addressed what is required to satisfy the "meaningful disclosure" element of § 1692d(6), however district courts in the Circuit increasingly agree that meaningful disclosure "requires that the caller must state his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call." *Hosseinzadeh v. M.R.S. Assoc., Inc.,* 387 F.Supp.2d 1104, 1112 (C.D.Cal.2005); *see also Costa v. Nat'l Action Fin. Serv.,* 634 F.Supp.2d 1069, 1074 (E.D.Cal.2007); *Gordon v. Credit Bureau of Lancaster & Palmdale,* No. CV 11–2272(PSG) (PJWx), 2012 WL 1813668, at *2 (C.D.Cal. Apr. 20, 2012) (adopting the standard set forth in *Hosseinzadeh* ); *Koby v. ARS Nat. Serv., Inc.,* No. CIV 09CV0780 JAHJMA, 2010 WL 1438763, at *3 (S.D.Cal. Mar. 29, 2010) (noting increasing consensus). Because these district courts' understanding of "meaningful disclosure" aligns with the remedial nature of the FDCPA, the court adopts their understanding here.

DNG argues that it is entitled to summary judgment on Ms. Moritz's § 1692d(6) claim because its employees made the requisite meaningful disclosures during their communications with Ms. Moritz. (Def. Mot. at 7–8.) Ms. Pierce, the DNG employee Ms. Moritz contends left the improper messages, testified that she left a standard voicemail message that said: "This message is for Martha Moritz. This is Tasha Pierce calling from the debt collection law firm of Daniel N. Gordon, PC. Please return my phone call at 1(800) 311–8566." [3] (1st Kraemer Decl. Ex 2 (Pierce Dep.) at 29:14–30:1.) She also testified that this standard voicemail message has not changed since the beginning of her employment. (*Id.* Ex. 2 at 29:24–30:1.) Matthew Aylworth, an attorney with DNG, similarly testified that that DNG employees are instructed to leave voicemail messages that say: "This is [employee's name] from the debt collection law firm of Daniel

---

**2.** The court has considered only evidence of alleged violations that occurred within the FDCPA's one-year statute of limitations. *See* 15 U.S.C. § 1692k(d).

**3.** Ms. Moritz argues that Ms. Pierce was not certain of her testimony and that, contrary to DNG's argument, the evidence does not incontrovertibly demonstrate that the message left by DNG provided the requisite disclosures. (Resp. to Def. Mot. (Dkt. # 53) at 3.) The court, however, is satisfied that Ms. Pierce's testimony, if believed, could support a jury verdict in DNG's favor.

N. Gordon, P.C. Please call me back." (2d Radbil Decl. Ex. 3 (Aylworth Dep.) at 106:5–8.) Based on the foregoing evidence, a reasonable jury could conclude that Ms. Pierce left DNG's standard voicemail message on Ms. Moritz's answering machine and that the message meets the meaningful disclosure requirement of § 1692d(6); it provided Ms. Moritz with the name of the caller and would have informed a reasonable recipient of the message about the nature of the communication. As such, the court concludes that DNG has satisfied its initial burden on summary judgment of presenting evidence establishing its entitlement to judgment as a matter of law.

The burden thus shifts to Ms. Moritz to create a genuine issue of material fact for trial. To do so, Ms. Moritz presents her own testimony that the voicemail messages left by Ms. Pierce did not disclose that the calls were from a debt collector but only stated: "Hi, this is Tasha Pierce from Attorney Daniel Gordon's office. I need a call back at 1–800." (2d Radbil Decl. Ex. 5 (Moritz Dep.) at 80:18–21.) Ms. Moritz also submits evidence that DNG's policy on voicemail messages instructed employees to disclose only the employee's name and phone number (id. Ex. 8 (DNG Policy)), and that DNG required its employees to leave voicemail messages consistent with its policies and procedures (Ans.(Dkt. # 30) ¶ 46).[4] Ms.

Moritz has also submitted the testimony of Brandy Nelson, a former manager with DNG, that DNG employees were instructed to leave a standard voicemail message that did not indicate that the call was from a debt collector.[5] (2d Radbil Decl. Ex. 1 (Nelson Dep.) at 143:6–144:24.) Rather, according to Ms. Nelson, DNG employees "were instructed to only say their name and where they were calling and a call-back number." (Id. Ex. 1 at 144:22–24.) Ms. Nelson testified that typically the DNG collectors would say: "Hi this is [employee's name] calling from Daniel N. Gordon, PC. Please give me a call back at this 800 number." (Id. Ex. 1 at 143:6–10.)

Finally, Ms. Moritz relies on DNG's business records to support her contention that Ms. Pierce did not make the required disclosures in her voicemail messages. (Resp. to Def. Mot. (Dkt. # 53) at 5–7.) Ms. Pierce testified that she is required to enter very detailed notes on every communication she has with a consumer into DNG's History Notes software. (1st Kraemer Decl. Ex. 2 (Pierce Dep.) at 21:16–23:12.) She also testified that she is required to note whenever she provides the consumer with a "mini-Miranda" warning, which is DNG's method of informing the customer that an employee is calling about collecting a debt.[6] (Id.) Some of Ms. Pierce's History Notes entries related to Ms. Moritz's account indicate that she a

---

**4.** DNG argues that Ms. Nelson testified that some of the information on the policy document DNG produced was outdated. (Resp. to Moritz Mot. (Dkt. # 51) at 4.) Nevertheless, Ms. Nelson's testimony does not specifically indicate that the policy regarding the contents of the voicemail message was outdated.

**5.** DNG argues that Ms. Nelson's testimony on this point is contradicted by her testimony that DNG's policy on verbal communications with a consumer is to disclose that the call is from a debt collection agency. (Resp. to Moritz Mot. at 6; 2d Kraemer Decl. (Dkt. # 52)

Ex. 3 (Nelson Dep. in *McLain v. Daniel N. Gordon, PC* ) at 65:7–11.) Because the court must view the evidence in the light most favorable to Ms. Moritz when considering DNG's motion for summary judgment, any apparent contradiction in Ms. Nelson's testimony does not warrant granting summary judgment in Defendants' favor.

**6.** Ms. Nelson similarly testified that a DNG employee should make a notation when he or she provides a consumer a mini-Miranda warning. (3d Radbil Decl. (Dkt. # 54) Ex. B (Nelson Dep.) at 103:16–23.)

"mini-Miranda," however, many others do not indicate that Ms. Pierce provided a mini-Miranda warning to Ms. Moritz. (*Compare* 2d Radbil Decl. Ex. 7 at GORD00044–45 (History Notes with no notation that mini-Miranda was provided), *with* 3d Radbil Decl. (Dkt. #54) Ex. A at GORD00035–36 (History Notes with notation that the mini-Miranda was provided).) Viewing the evidence summarized above in the light most favorable to Ms. Moritz, the court concludes that there is a genuine issue of material fact regarding the contents of Ms. Pierce's voicemail messages to Ms. Moritz and whether the voicemail messages complied with the meaningful disclosure requirement of § 1692d(6).

■■■■ DNG nevertheless argues that even if Ms. Pierce left voicemail messages that did not comply with § 1692d(6)'s meaningful disclosure requirement, it is entitled to summary judgment based on the bona fide error defense. (Reply to Def. Mot. (Dkt. #56) at 4.) "Although the FDCPA is a strict liability statute, it excepts from liability those debt collectors who satisfy the 'narrow' bona fide error defense." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir.2011) (citation omitted). The defense provides:

> A debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). "The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof." *McCollough*, 637 F.3d at 948 (citation omitted). "Thus, to qualify for the bona fide error defense, the defendant must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted

from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *Id.*

■■■■ DNG argues that the bona fide error defense applies because any messages left in the manner claimed by Ms. Moritz were contradictory to policy and training. (Reply to Def. Mot. at 4.) As discussed above, however, there are genuine issues of material fact regarding DNG's policies regarding the content of voicemail messages. Additionally, there is no evidence in the record regarding Ms. Pierce's intent. Summary judgment, therefore, is improper based on the bona fide error defense. For the foregoing reasons, the court denies DNG's motion for summary judgment with respect to Ms. Moritz's 15 U.S.C. § 1692d(6) claim.

### b. 15 U.S.C. § 1692e(11) Claim Against DNG

Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute provides a non-exhaustive list of conduct that is a violation of § 1692e, including:

> The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11). Most courts that have considered the issue have concluded

that "voicemails are communications that must conform to the disclosure requirements of section 1692e(11)." *Lensch v. Armada Corp.*, 795 F.Supp.2d 1180, 1189 (W.D.Wash.2011) (collecting cases, including those within the Ninth Circuit).

DNG contends that it is entitled to summary judgment on Ms. Moritz's § 1692e(11) claim for the same reasons it asserted with respect to Ms. Moritz's § 1692d(6) claim. (*See* Def. Mot. at 7–8; Reply to Def. Mot. at 2–5.) Ms. Moritz also asserts the same arguments and evidence regarding her § 1692e(11) claim as she did on her § 1692d(6) claim. (*See* Resp. to Def. Mot. at 2–7.) For the reasons explained above, there are genuine issues of material fact regarding the contents of the voicemail messages Ms. Pierce left for Ms. Moritz, particularly whether she disclosed that the call was from a debt collector. Accordingly, the court denies Defendants' motion for summary judgment with respect to Ms. Moritz's 15 U.S.C. § 1692e(11) claim.

**c. 15 U.S.C. § 1692f Claim Against DNG**

Section 1692f prohibits a debt collector from "us[ing] unfair or unconscionable means to collect any debt." 15 U.S.C. § 1692f. Section 1692f enumerates eight specific violations that are not intended to limit the applicability of the statute, *id.*, none of which are implicated in this matter. Rather, Ms. Moritz's complaint alleges that DNG violated § 1692f's general prohibition of "unfair or unconscionable means to collect any debt" by collecting Ms. Moritz's debt "without being licensed pursuant to Washington law, thus avoiding review by state authorities." (Am. Compl. ¶ 90.) There is no dispute that DNG is not licensed under Washington law. (Ans. ¶ 23.)

DNG argues that it is entitled to summary judgment because (1) there is no evidence that that DNG was required to be licensed pursuant to Washington law, and (2) violations of state law are not *per se* violations of the FDCPA. (Def. Mot. at 8.) For the reasons explained below, the court concludes that, viewing the evidence in Ms. Moritz's favor, no rational jury could find that the alleged violations of Washington law also violated the FDCPA. For purposes of this discussion, the court assumes the truth of Ms. Moritz's assertions that DNG violated Washington law by acting without a license and by sending debt collection letters to Ms. Moritz that did not itemize the amount of the debt as required by Washington law. (*See* Resp. to Def. Mot. at 11; Moritz Mot. at 7.)

The controlling authority on this issue is *Wade v. Regional Credit Association,* 87 F.3d 1098 (9th Cir.1996). In *Wade,* the defendant called the debtor and sent her a collection notice without a permit as required by Idaho law. *Id.* at 1099. The Ninth Circuit refused to find that the mere violation of the state licensing law constitutes a violation of the FDCPA and held that a debt collection practice in violation of state law is not *per se* a FDCPA violation. *Id.* at 1100. Instead, the court analyzed the substance of the allegedly improper communications to determine whether they constituted independent violations of the FDCPA. *Id.* at 1100. With respect to § 1692f's prohibition against unfair or unconscionable means of collecting, the court concluded that the "notice was relatively innocuous, and not 'unconscionable' in either a legal or lay sense." *Id.* The court also declined to follow district courts that had found that collection agencies violated the FDCPA by engaging in collection activities without the required state licenses, finding them "either inapposite or unpersuasive." *Id.* at 1100–01, 1101 n. 3.

For example, in disagreeing with the district court's decision in *Gaetano v. Pay-*

*co of Wisconsin, Inc.,* 774 F.Supp. 1404 (D.Conn.1990), the Ninth Circuit wrote:

> In *Gaetano,* the court found that the collector's unlicensed actions violated that section because the collector "deprived the plaintiff of her right as a consumer debtor residing within the state to have the defendant's qualifications as a collection agency reviewed by state authorities." 774 F.Supp. at 1415 n. 8. If Wade was deprived of such a right, her remedy lies in Idaho state law, not in Section 1692f of the FDCPA.

*Wade,* 87 F.3d at 1100–01. In short, the *Wade* court did not find any import in the defendant's failure to obtain a license in violation of state law and instead focused on the defendant's actions and whether they violated the FDCPA independent of any state-law violation. *See Taylor v. Quall,* 471 F.Supp.2d 1053, 1062 (C.D.Cal. 2007) (citing Wade for the proposition that instead of finding a state law violation a *per se* FDCPA violation, "the [c]ourt must determine whether any alleged state-law violation also constitutes a violation of one of the enumerated sections of the FDCPA"); *see also Khosroabadi v. N. Shore Agency,* 439 F.Supp.2d 1118, 1123–25 (S.D.Cal.2006).

 Applying the *Wade* analysis to the instant dispute, the court concludes that any violation of Washington's licensing requirements does not itself establish a violation of the FDCPA. *See Wade,* 87 F.3d at 1100–01. Ms. Moritz attempts to distinguish *Wade* on the basis that it interpreted Idaho regulations of collection agencies, which are different from Washington's corresponding regulations. (Resp. to Def. Mot. at 9.) There is no indication in the *Wade* opinion, however, that the specific content of the Idaho regulations had any bearing on the court's decision. As such, the court is not persuaded that *Wade* does not govern here. Ms. Moritz also asserts that courts "routinely" find violations of state laws that mandate licensure by collection agencies to constitute violations of the FDCPA. (Resp. to Def. Mot. at 9–10 (citing a number of district court decisions).) Yet most of the cases Ms. Moritz relies upon are not from the Ninth Circuit, where *Wade* is binding authority, and the only case from within this Circuit was decided before *Wade.* Moreover, a number of the cases Ms. Moritz cites were discussed in *Wade* and found to be unpersuasive, and Ms. Moritz offers no explanation for why the court should follow this authority in light of the *Wade* court's comments. *See Wade,* 87 F.3d at 1100 n. 3. Therefore, the court declines to follow the district court decisions relied upon by Ms. Moritz.

 Rather, the court must determine whether DNG's actions constitute independent violations of the FDCPA. *See Wade,* 87 F.3d at 1100–01; *Taylor,* 471 F.Supp.2d at 1062. Ms. Moritz points to a specific action taken by DNG that may be a violation of Washington law: failing to itemize the amount of Ms. Moritz's debt in its collection letters to her. (*See* Resp. to Def. Mot. at 11.) Ms. Moritz does not assert, however, that such a failure is an independent violation of the FDCPA, and the court has discerned no such violation based on its review of the statute. *See generally* 15 U.S.C. §§ 1692a, 1692g; *see also* 15 U.S.C. § 1692g (setting forth the requirements for the initial written communication with a consumer, which does not include the itemization required by Washington law); *Dunlap v. Credit Protection Ass'n, L.P.,* 419 F.3d 1011, 1012 (9th Cir.2005) (per curiam) (concluding that the notice provisions set forth in 15 U.S.C. § 1692g are sufficient to apprise debtors of their rights). When viewed from the perspective of the least sophisticated debtor and in the light most favorable to Ms. Moritz, no reasonable jury could conclude that the omission from the

letters of the itemized amounts constitutes an unconscionable or unfair attempt to collect a debt under the FDCPA. Accordingly, the court concludes that DNG is entitled to summary judgment on Ms. Moritz's 15 U.S.C. 1692f claim.

**d. FDCPA Claims Against Mr. Gordon**

The Ninth Circuit has not yet decided the question of whether an individual employee or shareholder, officer, or director of a debt collecting corporation may be held personally liable as a "debt collector" under the FDCPA. *See Robinson v. Managed Accounts Receivables Corp.*, 654 F.Supp.2d 1051, 1061 (C.D.Cal.2009); *Schwarm v. Craighead*, 552 F.Supp.2d 1056, 1073 (E.D.Cal.2008). There is a split among persuasive authority. The Sixth Circuit and the majority of district courts that have considered the issue have concluded that employees can be held personally liable under the FDCPA. *Robinson*, 654 F.Supp.2d at 1061 (collecting cases). On the other hand, the Seventh Circuit has held that employees cannot be held personally liable under the FDCPA unless the plaintiff can pierce the corporate veil. *Id.*

 District courts in the Ninth Circuit have followed the Sixth Circuit's approach. *See, e.g., Robinson*, 654 F.Supp.2d at 1061; *Schwarm*, 552 F.Supp.2d at 1071–73; *Townsend v. Nat'l Arbitration Forum, Inc.*, No. CV 09–9325–VBF(RNBx), 2012 WL 12736, at *12 (C.D.Cal. Jan. 4, 2012); *Smyth v. Merchants Credit Corp.*, No. C11–1879RSL, 2012 WL 588744, at *2–*3 (W.D.Wash. Feb. 22, 2012). The court agrees with the reasoning in these cases, particularly that articulated in *Schwarm*. Accordingly, the court concludes that "because the FDCPA imposes personal, not derivative, liability, serving as a shareholder, officer, or director of a debt collecting corporation is not, in itself, sufficient to hold an individual liable as a 'debt collector.'" *Schwarm*, 552 F.Supp.2d at 1073. Rather, the FDCPA "requires that the individual 'regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" *Id.* (quoting 15 U.S.C. § 1692a(6)) (alterations in *Schwarm*). Based on this standard, courts have found an individual personally liable if "the individual 1) materially participated in collecting the debt at issue; 2) exercised control over the affairs of the business; 3) was personally involved in the collection of the debt at issue; or 4) was regularly engaged, directly and indirectly, in the collection of debts." *Id.* (internal quotations and citations omitted).

 Mr. Gordon asserts that he cannot be held personally liable under the FDCPA because there is no evidence that he was involved in the collection of Ms. Moritz's debt. (Def. Mot. at 5–8.) In response, Ms. Moritz has submitted the following evidence in support of her argument that Mr. Gordon is individually liable under the FDCPA: Mr. Gordon requires all collectors to sign a memo stating that no one would leave a message for a debtor at a place of employment (3d Radbil Decl. Ex. C (Aylworth Dep. from *McLain v. Daniel N. Gordon, P.C.*) at 114:12–15:6); Mr. Gordon (along with other attorneys at DNG) drafts FDCPA compliance-related materials (*id.* Ex. D (Aylworth Dep. from *Mandelas v. Daniel N. Gordon, P.C.*) at 127:23–128:2); Mr. Gordon solicits new clients (2d Radbil Decl. Ex. 4 (Aylworth Dep. from *McLain v. Daniel N. Gordon, P.C.*) at 42:10–43:9; *id.* Ex. 2 (Nelson Aff.) ¶ 22); and Mr. Gordon convinces clients that he does not need to be licensed in Washington (*id.* Ex. 2 ¶ 22).[7] (Resp. to

---

**7.** Ms. Moritz also asserts that "the language of DNG's collection letters to consumers was drafted and approved by Gordon." (Resp. to Def. Mot. at 22.) The portion of the record to which she cites, however, does not support this assertion. (*See* 2d Radbil Decl. Ex. 4 at

Def. Mot. at 21–23.) Ms. Moritz argues that these actions both directly and indirectly caused the alleged violations at issue here. (*Id.* at 22–23.)

Viewing the evidence in Ms. Moritz's favor, the court concludes that she has failed to raise a genuine issue of material fact as to Mr. Gordon's liability for any of the alleged FDCPA violations. First, because Ms. Moritz does not allege or present evidence that Mr. Gordon or DNG employees left improper messages for her at her place of employment, the fact that Mr. Gordon drafted a policy forbidding employees from leaving such messages is irrelevant to the instant lawsuit. Second, even if Mr. Gordon drafted FDCPA compliance-related materials, there is no evidence that he drafted any of the policies that led to the alleged FDCPA violations here. Third, Mr. Gordon's solicitation of clients did not cause the allegedly improper voicemails, and is therefore inapplicable to Ms. Moritz's § 1692d and § 1692e claims. Finally, for the same reasons discussed above with respect to Ms. Moritz's § 1692f claim against DNG, her parallel claim against Mr. Gordon fails as a matter of law. For these reasons, the court grants Mr. Gordon's motion for summary judgment on all of Ms. Moritz's FDCPA claims against him.

### 2. Washington Consumer Protection Act Claim Against DNG

█ To prevail on a CPA claim, a plaintiff must establish five distinct elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman*

*Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 719 P.2d 531, 533 (1986). DNG's motion for summary judgment on Ms. Moritz's CPA claim primarily focuses on whether Ms. Moritz has presented evidence of an unfair or deceptive act or practice occurring in trade or commerce. (Def. Mot. at 9–13.) With respect to the remaining elements, DNG also contends that there is no evidence supporting Ms. Moritz's claim. (*Id.* at 12–13; Reply to Def. Mot. at 7; Resp. to Moritz Mot. (Dkt. # 51) at 7–18.) The court will address the elements of Ms. Moritz's CPA claim below.

### a. Unfair or Deceptive Act or Practice Occurring in Trade or Commerce

█ A plaintiff may establish an unfair or deceptive act or practice occurring in trade or commerce for purposes of a CPA claim by proving certain violations of the WCAA. RCW 19.16.440; *Evergreen Collectors v. Holt,* 60 Wash.App. 151, 803 P.2d 10, 12–13 (1991). In particular, the WCAA states:

> The operation of a collection agency or out-of-state collection agency without a license as prohibited by RCW 19.16.110 and the commission by a licensee or an employee of a licensee of an act or practice prohibited by RCW 19.16.250 are declared to be unfair acts or practices or unfair methods of competition in the conduct of trade or commerce for the purpose of the application of the Consumer Protection Act found in chapter 19.86 RCW.

RCW 19.16.440. Ms. Moritz's CPA claim is premised upon DNG's alleged violation

4–8.) The court will not scour the record in an attempt to locate facts supporting Ms. Moritz's assertion. *See Little v. Cox's Supermarkets,* 71 F.3d 637, 641 (7th Cir.1995) ("a district court is not required to scour the record [to look] for factual disputes [or] . . . to

piece together appropriate arguments"); *Greenwood v. F.A.A.,* 28 F.3d 971, 977 (9th Cir.1994) ("Judges are not like pigs, hunting for truffles buried in briefs." (citation omitted)).

of RCW 19.16.110, RCW 19.16.250(8), and RCW 19.16.260. (Am. Compl. ¶¶ 96, 101, 103, 105.) The court will begin by considering whether the undisputed evidence establishes that DNG violated RCW 19.16.110 and then turn to Ms. Moritz's RCW 19.16.250 and RCW 19.16.260 claims.

RCW 19.16.110 provides in relevant part: "No person shall act, assume to act, or advertise as a collection agency or out-of-state collection agency as defined in this chapter, except as authorized by this chapter, without first having applied for and obtained a license from the director." RCW 19.16.110. Here, there is no dispute that DNG is not licensed as a collection agency or out-of-state collection agency. (Ans. ¶ 23.) DNG argues that it is entitled to summary judgment on Ms. Moritz's CPA claim because it is not required to be licensed under RCW 19.16.110. (Def. Mot. at 9–13.) In response, Ms. Moritz contends that DNG qualifies as an out-of-state collection agency or, in the alternative, a collection agency. (Resp. to Def. Mot. at 12–21.)

Under the WCAA, the term "collection agency" includes "[a]ny person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another person." RCW 19.16.100(2)(a). Excluded from this definition is an "out-of-state collection agency," which is defined in relevant part as "a person whose activities within this state are limited to collecting debts from debtors located in this state by means of interstate communications, including telephone, mail, or facsimile transmission, from the person's location in another state on behalf of clients located outside of this state...."[8] RCW 19.16.100(3)(e), 19.16.100(4). Also excluded from the defi-

nition of "collection agency" is "[a]ny person whose collection activities are carried on in his, her, or its true name and are confined and are directly related to the operation of a business other than that of a collection agency, such as but not limited to: ... lawyers...." RCW 19.16.100(3)(c).

■ Here, the undisputed evidence establishes that DNG operated as an out-of-state collection agency. Both DNG and CACV are located outside of Washington. (2d Radbil Decl. Ex. 6 (DNG Resp. to Req. to Admit) ¶¶ 4, 5.) At all times relevant to this lawsuit, Ms. Moritz resided in Washington. (See, e.g., id. Exs. 9–14 (Letters Addressed to Ms. Moritz in Washington).) Additionally, DNG admits that it attempted to collect a debt from Ms. Moritz (id. Ex. 6 ¶ 4), and the evidence before the court is that all of DNG's actions taken to collect that debt—including initiating the action in Whatcom County, obtaining the state court judgment, conducting garnishment proceedings, and communicating with Ms. Moritz and others—occurred through interstate communications from Oregon to Washington. (See, e.g., 1st Radbil Decl. Ex. A (Interstate Communications Regarding Whatcom County Action); 2d Radbil Decl. Exs. 9–14 (Interstate Letters to Ms. Moritz).) That some of DNG's debt collection activities included litigation does not change the basic fact that all of DNG's activities were taken in an attempt to collect the debt owed to CACV.

DNG makes four arguments in an attempt to avoid the conclusion that it acted as an out-of-state collection agency. First, DNG asserts that it is excluded from the definition of an "out-of-state collection agency" because its "collection activities are carried on in ... its true name and are

8. There is one exception to the definition of "out-of-state collection agency," but it is not applicable here. See RCW 19.16.100(4).

confined and are directly related to the operation of a business other than that of a collection agency"—that is, a law firm. (Resp. to Moritz. Mot. at 8, 8 n. 7 (citing RCW 19.16.100(3)(c)).) Yet DNG's proposed statutory construction is contrary to the plain meaning of the statute. Out-of-state collection agencies and some lawyers are both excluded from the definition of "collection agency," however the exclusion related to lawyers is not reiterated in the definition of "out-of-state collection agency." *See* RCW 19.16.100(3), (4). If the legislature intended to exclude law firms who qualify as out-of-state collection agencies from the licensing requirements of the WCAA, it would have included such an exclusion in its definition of "out-of-state collection agency." Because it did not do so, the court declines to adopt DNG's proposed construction of the statute.

Second, DNG argues that it does not fall within the definition of an "out-of-state collection agency" because it is a law firm retained by clients to litigate disputes. (Def. Mot. at 11 n. 6 (citing Aylworth Decl. ¶ 3).) This general claim, however, does not establish that DNG's activities in Washington reach beyond attempting to collect debts or that DNG uses means other than interstate communications to do so. Accordingly, it does not create a genuine issue of fact regarding whether DNG is an out-of-state collection agency for purposes of the WCAA.

Third, DNG asserts that lawyers engaged in the practice of law are not subject to the WCAA because the statute prohibits licensees from "[p]erform[ing] any act or acts, either directly or indirectly, constituting the practice of law." RCW 19.16.250(5). The court has previously rejected this argument because "a plain reading of the narrow exemption [in RCW 19.16.100(3)(c) ] belies that assertion" and "if the legislature had intended such a broad exemption, it could have included

it." *Mandelas v. Gordon,* 785 F.Supp.2d 951, 961 (W.D.Wash.2011) (quoting *Lang v. Gordon,* No. C10–0819RSL, 2011 WL 62141, at *2 (W.D.Wash. Jan. 6, 2011)) (alteration in *Mandelas* ).

Finally, DNG contends that it is not an out-of-state collection agency because it "appeared before the Whatcom County District Court in the underlying collection case by filing a complaint and pursuing it to judgment." (Resp. to Moritz Mot. at 8 n. 7.) As such, DNG maintains, it did "much more to collect Ms. Moritz's debt than limiting itself to the means of interstate communications." (*Id.*) Yet in light of the evidence discussed above that all of DNG's contacts with the Whatcom County District Court were achieved by means of interstate communications via the United States mail, the court is not persuaded that DNG's activities in Washington extended beyond attempting to collect Ms. Moritz's debt by means of interstate communications.

In sum, the court concludes that the undisputed evidence submitted by the parties establishes that DNG acted as an out-of-state collection agency without a license in violation of RCW 19.16.110. This violation establishes per se the first two elements of a CPA claim as articulated in *Hangman Ridge,* 719 P.2d at 533. *See* RCW 19.16.440. As such, the court denies DNG's motion for summary judgment on the issue of whether it violated RCW 19.16.110.

As additional grounds for establishing an unfair or deceptive act or practice occurring in trade or commerce, Ms. Moritz alleges that DNG violated RCW 19.16.250(8) and RCW 19.16.260. (Am. Compl. ¶¶ 101, 103, 105.) In support of its motion for summary judgment, DNG contends that RCW 19.16.250(8) is inapplicable because DNG is not a licensee under the WCAA, and there is no evidence in the

record that it violated RCW 19.16.260. (Def. Mot. at 12–13.) For the reasons described below, the court agrees with DNG on both issues.

 First, the plain language of the WCAA provides that RCW 19.16.250 applies to "licensees," not "collection agencies" or "out-of-state collection agencies." [9] RCW 19.16.250 ("No licensee or employee of a licensee shall...."); RCW 19.16.440 ("[T]he commission by a licensee or an employee of a licensee of an act or practice prohibited by RCW 19.16.250 [is] declared to be [an] unfair act[] or practice[] ... for the purpose of the application of the [CPA]."). If the legislature had intended RCW 19.16.250 to apply to unlicensed collection agencies and unlicensed out-of-state collection agencies, it could have used such language in drafting the statute. Here, it is undisputed that DNG is not licensed under the WCAA, and therefore, although DNG may be held liable for acting as an unlicensed out-of-state collection agency under RCW 19.16.110, the WCAA does not provide for additional liability under RCW 19.16.250.

Second, Ms. Moritz makes no response to DNG's argument regarding RCW 19.16.260. (*See generally* Resp. to Def. Mot.; Moritz Mot.; Reply to Moritz Mot.) As such, she has failed prevent summary judgment on this issue by presenting sufficient evidence to create a genuine issue of material fact for trial. Further, the WCAA does not make a violation of RCW 19.16.260 a per se unfair act or practice or unfair method of competition in the conduct of trade or commerce for the purposes of the CPA. *See* RCW 19.16.440.

Thus even if Ms. Moritz had presented evidence that DNG violated RCW 19.16.260, she has not articulated why such a violation supports her CPA claim. For these reasons, the court grants summary judgment to DNG on the issues of whether it violated RCW 19.16.250 and RCW 19.16.260.

### b. Public Interest Impact

 The public interest element of a CPA claim may be satisfied in several ways. *See Hangman Ridge*, 719 P.2d at 536–39. In certain situations, the public interest element is satisfied per se by a showing of conduct in violation of a statute containing a specific legislative declaration of public interest impact. *Id.* at 538; *Stephens v. Omni Ins. Co.*, 138 Wash.App. 151, 159 P.3d 10, 24 (2007), *aff'd sub nom. Panag v. Farmers Ins. Co. of Wash.*, 166 Wash.2d 27, 204 P.3d 885 (Wash.2009). The WCAA, however, does not contain the required declaration of public interest impact.[10] "Whether the public has an interest is therefore an issue to be determined by the trier of fact." *Stephens*, 159 P.3d at 24; *see also Behnke v. Ahrens*, 280 P.3d 496, 503 (Wash.Ct.App.2012).

 DNG nevertheless contends that it is entitled to summary judgment on Ms. Moritz's CPA claim because she has presented no evidence related to any public interest impact. (Def. Mot. at 12–13; Reply to Def. Mot. at 7; Resp. to Moritz Mot. at 16.) The court disagrees. Where a complaint involves "essentially a private dispute" the following factors are relevant to whether there is a public interest impact:

---

**9.** The WCAA defines a "licensee" as "any person licensed under this chapter." RCW 19.16.100(9).

**10.** Ms. Moritz incorrectly argues that establishing a violation of the WCAA establishes the public interest element per se. (*See* Moritz Mot. at 20; Reply to Moritz Mot. at 11–

12.) Although the CPA provides that an unfair or deceptive act or practice is per se injurious to the public when it "[v]iolates a statute that incorporates this chapter ...," RCW 19.86.093, the WCAA does not incorporate the CPA; it merely references the CPA, *see* RCW 19.16.440.

(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?

*Stephens*, 159 P.3d at 24 (quoting *Hangman Ridge*, 719 P.2d at 538). "[I]t is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." *Hangman Ridge*, 719 P.2d at 538. Here, Ms. Moritz has directed the court's attention to the matter of *Snyder v. Daniel N. Gordon, P.C.*, No. C 11–1379RAJ, which is currently pending before another court in the Western District of Washington. (Reply to Moritz Mot. at 12.) In *Snyder*, the court recently denied DNG's motion for summary judgment on the question of whether it violated the WCAA by collecting debts without a license and concluded that DNG had violated the statute. 2012 WL 3643673, at *6–*7 (W.D.Wash. Aug. 24, 2012). Additional evidence in the record further supports a conclusion that that DNG likely attempted to collect debts from other persons in violation of the WCAA. (*See, e.g.,* 2d Radbil Decl. Ex. 15 (Nelson Dep. in *McLain v. Daniel N. Gordon, P.C.*) at 37:8–10.) This evidence creates a triable fact regarding whether DNG's violation of the WCAA affects the public interest. Accordingly, the court denies DNG's motion for summary judgment on the issue of public interest impact.

### c. Injury to Business or Property Caused by Violation of WCAA

▆▆▆▆ The final elements of a CPA claim are that the defendant's conduct caused injury to the plaintiff in his or her business or property. "The injury involved need not be great, but it must be established." *Hangman Ridge*, 719 P.2d at 539. Because the injury must be to the plaintiff's "business or property," "[p]ersonal injuries are not compensable damages under the CPA." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wash.2d 299, 858 P.2d 1054, 1064 (1993). Specifically, pain and suffering and emotional distress damages are not compensable CPA injuries. *White River Estates v. Hiltbruner*, 134 Wash.2d 761, 953 P.2d 796, 797 n. 1 (1998). Further, the Washington Supreme Court has explained:

[N]o monetary damages need be proven, and ... nonquantifiable injuries, such as loss of goodwill would suffice for this element.... A loss of use of property which is causally related to an unfair or deceptive act or practice is sufficient injury to constitute the fourth element of a Consumer Protection Act violation. The injury element will be met if the consumer's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.

*Mason v. Mortgage Am., Inc.*, 114 Wash.2d 842, 792 P.2d 142, 148 (1990) (internal citations omitted). "To establish the causation element in a CPA claim, a plaintiff must show that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Carlile v. Harbour Homes, Inc.*, 147 Wash.App. 193, 194 P.3d 280, 290 (2008) (citing *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wash.2d 59, 170 P.3d 10, 22 (2007)).

▆▆▆▆ The basis for DNG's summary judgment motion with respect to the elements of injury and causation is that Ms. Moritz has submitted no evidence in support these elements. (Def. Mot. at 12–13; Reply to Def. Mot. at 7.) Ms. Moritz, however, has submitted evidence that she in-

curred a postage charge of $7.75 for sending a letter to DNG via certified mail as a result of DNG's unlicensed collection activities.[11] (Moritz Aff. ¶¶ 2–4, Ex. 2; 2d Radbil Decl. Ex. 5 (Moritz Dep.) at 51:13–52:7.) DNG responds that Ms. Moritz cannot claim such injury when she was unable to identify her damages or her injury in her deposition. (Resp. to Moritz Mot. at 16–17.) Yet contrary to DNG's assertions, evidence of Ms. Moritz's postage charges does not directly contradict the deposition testimony to which DNG cites, and the court will consider it in ruling on the cross-motions for summary judgment. (*Compare* 2d Kraemer Decl. (Dkt. # 52) Ex. 1 (Moritz Dep.) at 72:8–73:17, *with* Moritz Aff. ¶¶ 2–4, Ex. 2.) Thus taking Ms. Moritz's evidence into account, the court concludes that Ms. Moritz has presented evidence of an injury that was caused by DNG's unlicensed collection activity, and that summary judgment in DNG's favor on this issue is improper.

### C. Ms. Moritz's Motion for Partial Summary Judgment

#### 1. Fair Debt Collection Practices Act Claims Against DNG

Ms. Moritz moves for summary judgment on her claims against DNG under § 1692d(6) and § 1692e(11) of the FDCPA. (Moritz Mot. at 9–13.) The parties present the same arguments and evidence as they did in support of and opposition to DNG's motion for summary judgment on these issues. Viewing this evidence in DNG's favor, the court concludes that there are genuine issues of material fact that preclude summary judgment on these claims for the same reasons articulated above with respect to DNG's motion for summary judgment. Accordingly, the court denies Ms. Moritz's motion for partial

summary judgment with respect to her FDCPA claims against DNG.

#### 2. Washington Consumer Protection Act Claim Against DNG

Ms. Moritz also moves for summary judgment on her CPA claim against DNG. (Moritz Mot. at 13–23.) For the same reasons articulated above with respect to DNG's motion for summary judgment, the court concludes that Ms. Moritz has established that DNG violated the WCAA by acting as an unlicensed out-of-state collection agency, but that Ms. Moritz has failed to establish that DNG violated RCW 19.16.250(8). The court further concludes, for the same reasons stated above, that DNG's violation of the WCAA does not impact the public interest per se, but that Ms. Moritz has presented sufficient evidence of an identical injury to others to bring the issue before a trier of fact. Finally, with respect to the injury and causation elements, the court concluded above that Ms. Moritz presented undisputed evidence that she incurred a $7.75 postage fee as a result of DNG's unlicensed collection activities. This conclusion applies equally with respect to Ms. Moritz's motion for partial summary judgment.

The court must address one further issue, however, with respect to Ms. Moritz's alleged injury. She contends that she is entitled to damages in the amount she remitted to DNG in payment of the underlying debt owed to CACV because DNG's collection efforts were unlawful given that it lacked the requisite license. (Moritz Mot. at 22–23; *see also* Am. Compl. ¶ 108.) Ms. Moritz asserts that she paid DNG $2,250.00 to satisfy the underlying debt, and DNG does not dispute this fact. (Moritz Mot. at 23 (citing 2d Radbil Decl. Ex. 3 (Aylworth Dep.) at 134:10–135:1;

---

11. Ms. Moritz also contends that DNG's conduct caused her emotional distress, worry and embarrassment. (Moritz Mot. at 21.) Such

damages, however, are not compensable under the CPA. *White River Estates*, 953 P.2d at 797 n. 1.

Moritz Aff. ¶ 10).) This amount was less than the total amount of principal and interest that Ms. Moritz owed CACV on the underlying debt. (*See* Am. Compl. ¶ 25.)

The court has been unable to locate a Washington State CPA case that addresses whether a plaintiff who pays a valid debt in response to unlawful collection activities is injured in the amount paid, nor has Ms. Moritz cited any. Rather, Ms. Moritz relies on the proposition from *Mason* quoted above that "[a] loss of use of property which is causally related to an unfair or deceptive act or practice is sufficient injury to constitute the fourth element of a [CPA] violation." (Moritz Mot. at 22 (quoting *Mason*, 792 P.2d at 148).) In *Mason*, the purchasers of a mobile home brought an action against the seller and lender to recover for breach of contract and violation of the CPA. 792 P.2d at 143. Even though the agreement between the purchasers and the lender provided that the purchasers would grant a deed of trust to secure their obligation to the lender, the lender had them sign over their real property by way of a quitclaim deed. *Id.* at 144. With respect to the fourth element of a CPA violation, the court reasoned that even setting aside the actual monetary damage caused by the defendants' breaches of their contracts with the purchasers, the purchasers would have been able to establish injury to their property given their loss of title to their real property. *Id.* at 149. The court consequently concluded that notwithstanding the actual damage award, the purchasers would have been entitled to reasonable attorneys' fees and costs under the CPA. *Id.*

Although *Mason* provides guidance regarding when a party may be injured within the meaning of the CPA, it does not establish that loss of use of property results in actual damages under the statute.

Indeed, there is no indication in the *Mason* opinion that the court awarded actual damages for the purchasers' temporary loss of title. Furthermore, even if the court had awarded such damages, *Mason* does not dictate that the same result is appropriate here because there is no dispute that Ms. Moritz owed CACV the amounts collected, whereas the lender in *Mason* acquired the purchasers' property in contravention of their agreement. Accordingly, *Mason* does not support Ms. Moritz's contention that she is entitled to a return of the amounts paid to DNG to settle her debt to CACV.

Ms. Moritz also relies on *Hamid v. Stock & Grimes*, 876 F.Supp.2d 500, 2012 WL 2740869 (E.D.Pa. Jul. 9, 2012). (Moritz Mot. at 22–23.) In *Hamid*, the court agreed with the plaintiff that the defendant violated the FDCPA by filing an underlying debt collection action against her when the action was barred by the applicable statute of limitations. *Id.* at *1. With respect to damages, the plaintiff argued that she should be able to recover as actual damages the amounts she paid to the defendant to settle the state court action. *Id.* The court denied the defendant's motion *in limine* and concluded that the plaintiff could present evidence to the jury of the amount she paid to settle the state court action. *Id.* at *3. The court reasoned: "It is clear from its underlying purpose that debtors may recover for violations of the FDCPA even if they have defaulted on a debt. It follows that debtors may recover the amount paid to settle a debt, if the debt collector violated the FDCPA in making the collection, as occurred here." *Id.* at *2.

Hamid is distinguishable from the instant dispute because no statute of limitations barred CACV's state court action against Ms. Moritz. Indeed, there is no argument here that CACV could not col-

lect the debt owed from Ms. Moritz; the only issue is whether DNG violated Washington law in doing so. Other courts have found that plaintiffs are not injured in the amount collected when the plaintiff owed the debt even where the debt collector violated state law in doing so. *See Gray v. Suttell & Assocs.*, No. CV–09–251–EFS, 2012 WL 1067962, at *6 (E.D.Wash. Mar. 28, 2012) ("To the extent that Mr. Scott alleges an injury as a result of the garnished amount [of the debt he owed] based solely on the underlying debt and interest thereon, Mr. Scott fails to allege an injury to his business or property [for the purposes of his CPA claim]."); *Flores v. The Rawlings Co., LLC,* 117 Hawai'i 153, 177 P.3d 341, 358 (2008) (finding that although the defendant's collection activities might have violated state statutes, the plaintiffs were not injured by paying the underlying debt because the debt was valid); *Camacho v. Auto. Club of S. Cal.,* 142 Cal. App.4th 1394, 1405, 48 Cal.Rptr.3d 770 (2006) (finding that the plaintiff could not establish an injury from the allegedly unfair collection practice where he conceded liability and owed the amounts that were collected). Based on these cases, the court concludes that Ms. Moritz cannot recover the amounts she paid to DNG because those amounts were less than the total amount she owed to CACV on a valid debt. In sum, the court grants in part and denies in part Ms. Moritz's motion for summary judgment with respect to her CPA claim against DNG.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' motion for summary judgment (Dkt. # 42), GRANTS in part and DENIES in part Ms. Moritz's motion for partial summary judgment (Dkt. # 45), and DENIES as MOOT Ms. Moritz's motion for leave to file supplemental authority (Dkt. # 60).